## . MERRICK'S EXECUTOR & Another *v.* GIDDINGS.

IN ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued October 23, ·26, 1885.—Decided November 9, 1885.

A State employed two attorneys to collect a claim, and agreed to pay them a certain percentage on any amount recovered by suit. They brought a suit and obtained judgment for the State upon the claim. The State employed another person as agent, to assist in its collection, and made an agreement with him to pay him a percentage which should cover all attorney's fees, already accrued, or to be afterwards incurred ; and afterwards modified this agreement in respect to the amount which hè should receive if contingent fees should have to be paid to any other persons under contracts with them. This agreement and its modification were unknown to the two attorneys first employed by the State. The agent, knowing of the agreement of these attorneys with the State, promised them to hold any fund that he might collect until their fees should be paid by the State. He collected a large amount, and paid most of it over to the State, retaining in his hands, after deducting his own compensation, a sum less than was due to them under their contract with the State. They made a final settlement with the State for this sum in discharge of all their demands against the State: *Held,* That they could not afterwards maintain any action against the agent, on his promise to them.

This action was brought by Richard T. Merrick and Thomas J. Durant to recover damages sustained by them in consequence of the violation of an agreement alleged to have been made by the defendant in error, in reference to compensation due them for certain legal services rendered in behalf of the State of Texas. The declaration contained a special count, and also a common count for money had and received to the use of the plaintiffs. The answer put in issue the existence of the alleged agreement, and every material fact averred in the declaration. Verdict and judgment for defendant. 1 Mackey, 394. Plaintiffs sued out this writ of error. Although the record contained several bills of exceptions upon plaintiffs' offer to introduce evidence, the decisive question was, whether the court erred in peremptorily instructing the jury, upon the whole case, to find for the defendant.

After the present writ of error was sued out, each of the

plaintiffs died, and the action was revived in the name of their respective personal representatives.

The bill of exceptions stated that there was evidence tending to make the following case :

In the year 1867, Mr. Merrick, in conjunction with other counsel, was employed by the State to conduct, and they did conduct, legal proceedings for the recovery of certain bonds and coupons, of which, at the commencement of the recent civil war, she was the holder and owner, but which, pen·;ing that conflict, were transferred by a military board of the insurrectionary government,of Texas for the purpose of enabling it to carry on war against the United States.     These bonds had been received by the State from the United States under and in pursuance of the act of Congress, approved September 9, 1850, entitled " An Act proposing to the State of Texas the Establishment of her Northern and Western Boundaries, the Relinquishment by the said State of all Territory claimed by her exterior to said Boundaries, and of all her Claims upon the United States, and to establish a territorial Government for New Mexico."     9 Stat. 446, ch. 49.     At the time of the employment of Mr. Merrick, some of the bonds and coupons so transferred were held, in this country, by the firm of White & Chiles, while the residue had been sent to England, and were there held, for others, by Droege & Co. and the Manchester Bank.

The suit instituted was by original bill filed in this court in the name of the State against the firm of White & Chiles and others.     By the final decree therein it was adjudged that the State was entitled to recover the bonds and coupons of which White & Chiles claimed to have become owners under a contract made between them and said military board on January 12, 1865.     *Texas* v. *White*, 7 Wall. 700, 741-2.     Subsequently, in 1873, the governor of Texas employed Mr. Merrick and Mr. Durant to institute, and accordingly they did institute, suit in the Court of Claims for the recovery of the proceeds of such of the bonds and coupons as had been sent to England ; their compensation to be twenty per centum of what might be recovered by means of that suit.     It does not appear what, if anything, was realized by that proceeding.

After the decree in this court in *Texas* v. *White*, establishing the invalidity, as to the lawful government of Texas, of the transfer made to White & Chiles, title was asserted by Chiles, individually, to the bonds and coupons, or their proceeds, held in England. Of this new claim, based upon a contract which Chiles pretended was made with him alone by said military board, Droege & Co. and the Manchester Bank were formally notified; and such claim and notice constituted the sole impediment in the way of the prompt recognition by that firm and bank of the State's right to receive the bonds and coupons, or their proceeds, so held by them.

In this condition of affairs, the State, on the 2d of June, 1874, entered into a written agreement with J. D. Giddings and the defendant, whereby they were constituted agents, to proceed by suit against all persons having claims adverse to Texas, to all or any part of the bonds transferred by said military board, with authority to compromise those claims upon such terms as the governor of the State should approve. And it was stipulated that the agents should have, for their services, a contingent fee of ten per cent. for all sums actually received, under their appointment, by compromise, and twenty per cent. on all sums recovered and actually realized by suit, and no more; such "per cents., respectively, to cover all costs and expenses and attorney's fees, whether accrued heretofore or to be incurred hereafter, so as to give the State of Texas all of the money so to be obtained, save and except the ten per cent. aforesaid." The selection of J. D. Giddings and D. C. Giddings as agents of the State was not designed to interfere with the counsel previously employed; for, shortly after their appointment, the governor of Texas informed the latter that such agents were to be only their "outside aids" in conducting the litigation.

On the 13th of October, 1874, in consequence of objections made by defendant to the terms of the contract of June 2, 1874, the governor agreed to its modification, as indicated by his indorsement, as follows:

"Whereas apprehensions have been expressed by J. D. and D. C. Giddings that, in consequence of outstanding contracts

heretofore made with other attorneys, under which contingent fees are claimed, that if said claims are sustained, the said Giddings might become liable to the State for any excess thereof above ten or twenty per cent. stipulated in the within contract; this indorsement is made for the purpose of declaring that no such liability by the said Giddings in said event was intended or contemplated; and as, under outstanding contracts, as aforesaid, the per cent. for fees may equal or exceed that stipulated for that purpose in this contract, it is hereby declared that said Giddings shall be paid, in that event, a reasonable per cent. of the amount realized by them on compromise, which shall be a just compensation for their services."

Subsequently, in November and December, 1874, Merrick and Durant were employed by the State to institute and conduct further proceedings to remove and avoid the new title and pretension set up by Chiles to the bonds and coupons, or their proceeds, held in England. It was agreed that if, by means of those proceedings, the State recovered the bonds and coupons, or their proceeds, the attorneys should receive for their compensation twenty per centum of what was so obtained. Under such employment they commenced proceedings in this court, which resulted in a judgment, rendered March 29, 1875, to the effect that Chiles, in making claim to the bonds and coupons, and their proceeds, in England, was in contempt of this court, for which he should pay a fine to the United States of $250, and stand committed until it was paid. *In re Chiles*, 22 Wall. 165: Of these proceedings the defendant was informed by Merrick and Durant; indeed, defendant urged upon the attorneys the necessity of such a suit, in order that his trip to England be attended with success. He was furnished by the attorneys with a certified copy of all the proceedings in this court. The defendant, with knowledge of the State's contract with the attorneys, and, also, that the latter claimed twenty per cent. of what might be collected in England, went abroad in July, 1875, and, prior to September 29 of that year, succeeded in recovering of such bonds and coupons, and their proceeds, an amount equivalent to $339,240 in the currency of the United States. This collection was effected

solely in consequence of the last-mentioned proceedings in this court. Prior to his departure for Europe, as well as after his return to this country, the defendant promised the attorneys that he would hold any fund collected, until their fees should be paid, and he informed them that the governor of Texas had given him the assurance that all fees might be paid from that fund before its surrender to the State. The last occasion upon which that promise was made and information given was on the 30th of September, 1875, during an interview with Mr. Durant, while defendant was in Washington for the purpose of obtaining payment of the bonds and coupons recovered in Europe. The defendant left Washington the same day, and shortly thereafter, under the requirement of the governor of Texas, paid to the latter, of the funds so collected, the sum of $300,000. Of this fact the attorneys were informed by defendant, on the 23d day of October, 1875. They were at the same time notified that, out of the balance, $39,240, in his hands, the governor of Texas had allowed to J. D. and D. C. Giddings the sum of $31,240, leaving for the attorneys only the sum of $8,000, which latter amount the governor of ·Texas agreed should be held until they could be heard from. Finally, on December 17, 1875, the $8,000 was paid by defendant to the governor of Texas. After December 30, 1875, and prior to January 12, 1876, the attorneys were notified by the governor of Texas, that, "unless they would accept said sum of $8,000 under a receipt in full for all services by them rendered to the State in respect to said bonds and coupons, &c., he would pay that sum into the treasury of the State, and leave the legislature to settle the matter."

On the 12th of January, 1876, Merrick and Durant—without knowledge of the existence of the contract of June 2, 1874, or of its modification on the 12th of October, 1874, or of the fact that defendant held the $8,000 on the 21st of October, and retained it until December 17, 1875—addressed a letter to the governor of Texas, in which, although protesting against the injustice done them by limiting the amount of their compensation to $8,000, they enclosed a receipt for that sum, "acknowledging the same to be in full for all demands against the said

State, in and about the recovery of the said bonds and coupons or their proceeds." The bill of exceptions set forth that had they been informed of the facts of which, as just stated, they had no knowledge, they would not have executed that receipt, or received the said $8,000 upon it.

Other facts were set out in the bills of exceptions, but as they do not materially affect the conclusion to be necessarily reached from those recited, they need not be stated.

*Mr. John Selden* for plaintiffs in error.

*Mr. Attorney-General* and *Mr. Fletcher P. Cuppy* for defendant in error.

Mr. Justice Harlan delivered the opinion of the court. After stating the facts in the language above reported, he continued:

The instruction to find a verdict for the defendant must be tested by the same rules that apply in the case of a demurrer to evidence. *Parks* v. *Ross*, 11 How. 362, 373; *Richardson* v. *City of Boston*, 19 How. 263, 268; *Schuchardt* v. *Allens*, 1 Wall. 359, 370. If, therefore, the facts established, and the conclusions which they reasonably justify, do not disclose a valid cause of action against the defendant, the judgment must be affirmed; otherwise reversed.

It must be conceded that the claim of Merrick and Durant to be entitled, under their contract, to receive for their services an amount equal to twenty per cent. of the bonds and coupons, and their proceeds, recovered by the defendant in England, finds strong support in the facts which the evidence, as we are informed by the bill of exceptions, tended to establish; for, not only does that recovery seem to have been the immediate result of the legal proceedings instituted and conducted by the attorneys, but the evidence justifies the conclusion that it was in the minds of all the parties, including the governor of Texas and the defendant, that the attorneys should be deemed to have participated in any collections made in England, provided it appeared that those collections were the result of the suit last instituted in this court.

In this view of the evidence, and under all the circumstances of the case, it may be that the promise by the defendant not to part with the bonds and coupons, or their proceeds, which might be recovered in England, until the fees of the attorneys were settled, was not inconsistent with the relations which he and they respectively held to the State. And it may also be that, for the violation of that promise, the defendant was responsible to them in damages. But, in our opinion, the attitude of the parties towards each other, and the whole aspect of the case, was changed when the attorneys, with information as to the amount collected by defendant, and with knowledge that their claim of twenty per cent. of such collections was controverted, came to a final settlement with the State upon the basis of $8,000 as full compensation for all services rendered in and about the recovery of the bonds and coupons, or their proceeds. That settlement, we are constrained to hold, swept away the very foundation of their demand against the defendant; for, in establishing that demand, it was necessary to show that the State was actually indebted to them for legal services rendered. But how could such indebtedness be shown to exist, and how could the attorneys be said to have been damaged, within the meaning of the law, when, prior to any suit against defendant for violation of his agreement, the attorneys voluntarily submitted to a compromise, by which, in consideration of a named sum, they released the State from all further liability to them? Their suit proceeds upon the distinct ground that defendant's failure to keep his promise deprived them of the opportunity to obtain such amount as the State owed them for their services. But that breach by defendant of his promise could not be made the basis of an action for damages, after they stipulated with the State to receive, and did receive, a specified sum in full discharge of all claims for legal services in respect of the bonds and coupons, or their proceeds. And this view of the rights of the parties is not at all affected by the fact that the attorneys were, at the time of their settlement with the State, ignorant of the existence of the contract of June 2, 1874, or of its subsequent modification. To that contract they were not parties, and it was entirely

competent for the State and her agents to modify it without notice to or consultation with others.  The attorneys had their separate contract with the State, made at the time of their employment, under which they proceeded against Chiles in respect of his individual claim to the securities, or their proceeds, held in England.  The defendant was not bound by his relations with them to disclose the terms of the contract which he and his partner had with the State.  The attorneys were in possession of all the facts essential to their determination of the question whether they would stand upon their own contract or accede to the proposition made by the governor to pay them, in full of all demands, a specified sum.  With information as to the amount actually recovered for the State, and as to the amount claimed by, and allowed to, the defendant and his partner for their services, the attorneys made a final settlement with her upon the basis already indicated.  That settlement, we repeat, precluded them from making any further claim upon the fund which came to the hands of the defendant as agent of the State, and, consequently, precludes them from recovering damages by reason of the defendant having surrendered that fund in advance of the payment of their fees, retaining only what was allowed to him and his partner for their services.

Touching the suggestion that the defendant and his partner were not justly or equitably entitled to receive more than the attorneys who conducted the litigation, it is sufficient to say that the former did not receive more than the State agreed to pay them, while the attorneys have received what they agreed to accept in full discharge of their claim against the State.

For these reasons, and without reference to other considerations pressed upon our attention, it was proper to instruct the jury to find for the defendant.

*Judgment affirmed.*