The opinion of the court was delivered by
Watkins, J.
This is a petitory action for the recovery of a small tract of land situated in the vicinity of the route of the Vicksburg, Shreveport & Pacific Railroad, with its rents and revenues; and the plaintiff also claims damages for the destruction of timber.
Defendant is sued as a naked trespasser, without color of title or right in the property.
To this suit defendant first filed an exception of no cause of action, which having been referred to the merits, he filed an answer, in which he averred that he was in possession of the property, that plaintiff was without any legal or valid title to said land, and had no such interest therein as to entitle him to sue him for its recovery. He further averred that he is entitled to the -benefit of the home *1013 stead laws of ^he United States government, and, believing that this land had reverted to the government, or that the title thereto was in the State of Louisiana, and therefore would so revert, as the railroad had not been completed within the time required by the granting act of Congress, he made a settlement and located on this land, with the bona fide intention of acquiring a home for myself and family, and of entering same under the homestead law, as soon, as it was declared subject to entry; or, if said land should be confirmed to said railroad company, that he would purchase same from it; and that he had repeatedly offered to buy it from, said company, if it could make him a clear, warranty title — but it could not do so.
He makes claim for §1200 as the value of his improvements in case of eviction, and pleads the prescription of one year against plaintiff’s demands for revenues and value of timber destroyed.
The cause was tried by á jury of the vicinage, and from an adverse verdict and judgment plaintiff has appealed.
The history of plaintiff’s title is as follows: In 1887 plaintiff acquired title from the Vicksburg, Shreveport & Pacific Railroad Company; and it acquired by purchase at master’s sale, made on the 1st of December, 1879, in the foreclosure of a mortgage, which was executed on the 1st of September, 1857, by the Vicksburg, Shreveport and Texas Railroad Company, whose right, title, interest aud franchises the said Vicksburg, Shreveport & Pacific Railroad Company had in the meanwhile acquired.
This mortgage of the said lands, appurtenances and franchises of the Vicksburg, Shreveport & Texas Railroad Company, was specially authorized by an act of the Legislature of date March 19, 1857.
There had been another act of the Legislature passed on the 11th of March, 1857, formally accepting the benefits of the act of Congress of date of June 8, 1856, donating certain lands to the State of Louisiana, for the purpose of aiding in the construction of a railroad from the Texas State line to the Mississippi river, at a point opposite Vicksburg, in the State of Mississippi; and upon the same terms disposed of the same to the said railroad company.
On defendant’s answer, and this chain of title thus traced back to the United States government, his contentions are as follows:
That there is no evidence in this record of any special authorization by the State to the Vicksburg, Shreveport & Texas Railroad *1014 Company to execute a mortgage on the granted lands; no evidence to show that the railroad company ever issued any bonds for the security of which said act of mortgage was executed; that, if granted, said mortgage was absolutely null and void, because, under the granting act of Congress, the State was only authorized to sell lands opposite each twenty miles of completed road, but she was powerless to grant any right or make any disposition whatever of other lands until the road had been completed for another twenty miles, and so on, to the end of the route; and that the completion of said road, as aforesaid, was made by said act a condition precedent to any disposition thereof by the State. Then, as there has been no act of the State since the completion of the road opposite the land in controversy, divesting herself of the legal title to same, it must be in the State, subject to be reclaimed by the government of the United States, and disposed of as it may deem best, as the terms of the grant are, that if said road is not completed within ten years no further sales shall be made, and the land unsold shall revert to the United States. He further contends that the grant of the State in 1857 to the railroad company, the act authorizing the mortgage, if any, the act of mortgage itself, and the sale to the railroad company, were subjected to the condition precedent, that the State had the right to declare the grant forfeited if the road was not completed within ten years, thereby destroying all intermediate rights that the company had acquired thereunder. That all parties contracting with the company were bound to know that this condition was thus imposed, and they must have been aware that their acquisition of it was cam onere. That in 1879 an act of the Legislature was passed repealing the act of 1857, disposing of these lands to the railroad company, that the master’s sale of the property was not made for some months thereafter, and that the railroad company had full knowledge of such reservation when it became the adjudicatee thereof.
At our last term of court we had under consideration and decided case entitled Vicksburg, Shreveport & Pacific Railroad Company Sledge, 41 An. 896, which was a case quite similar to the instant She, and in which we rendered an opinion adverse to the claims and pretensions of the defendant, who was a settler upon these railroad lands, like this defendant, claiming to be a bona fide possessor, with # *1015 an intention to acquire a title from the United States government under the homestead laws.
In that case we held, on a-careful consideration of the issues involved, that the State did, by a special act of the Legislature, of date March 19, 1857, grant to the Vicksburg, Shreveport & Texas Railroad Company “the full and perfect right to mortgage and hypothecate all or any part of the lands granted by the United States to the State of Louisiana, to aid in the construction of said railroad, by virtue of an act of Congress making a grant of lands to the State of Louisiana, to aid in the construction of railroads in said State, approved June 3, 1856.” 41 An. 900.
Thereunder we found that a large quantity of bonds were issued by the company, for the security of which a mortgage was regularly executed. We found that on due proceedings had, the validity of this mortgage was recognized by the Supreme and Circuit Courts of the United States, and that all the lands and franchises acquired by said company under that grant, and under the. assignment of the State, were purchased by the Vicksburg, Shreveport & Pacific Railroad Company, at a judicial sale, made under and in pursuance of decrees of the Circuit Court, and that it went into possession thereunder.
While it may be true, as a.general.proposition, thatThe act of the Legislature authorizing the execution of this act of mortgage, being a private act, should have been introduced in evidence; yet, that it was not, can make no difference, as we are bound to take judicial cognizance of our own decisions, and by the terms of the decision just quoted we are informed that the mortgage was duly authorized .and executed.
With regard to the right of the Legislature to authorize the company to execute meh a mortgage, whereby the title might be irrevocably divested, before the - conditions of the grant were fulfilled, a sufficient answer is found, in our opinion, in the Sledge case; for, in that case, we «held that the State made the disposition of the lands granted to the railroad company on precisely similar conditions to those under which Congress made the grant to her; and we held that “the act of June 3,1856, by the Congress of the United States, passed a present interest in the lands to the State of Louisiana, which became certain by identity, when the sections were located, and maps were filed with the Secretary of the Interior.”
We also found that the State conveyed these sections to the rail *1016 road company in 1857, and that “it was a condition precedent to the conveyance of any of the sections, that the road should be first constructed in sections of twenty consecutive miles each, before the road could get title to any portion of the land coterminous with its constructed line.” We found that “ the road had completed (only) a portion of its line,” and that the “portion between Shreveport and Monroe (Louisiana) was not constructed within the ten years.” We held that the “ Federal government, neither by legislative act or judicial construction, has declared the forfeiture of the grant, and under the well recognized jurisprudence of the Federal courts, the Legislature of the State of Louisiana — if the State had done no act to estop her from setting up an adverse claim to the present grant to the plaintiff — could forfeit the grant to the railroad, on the ground of the non-fulfilment of the condition subsequent to said grant, the completion of the road within the fixed limit of ten years.”
We held that “the United States government could have complained of the manner of the execution of the trust by the State, but it has made no objection to the’ interpretation placed upon the act donating the lands by the State of Louisiana to the Vicksburg, Shreveport & Texas Railroad Company.” That “the present plaintiff (the railroad company) acquired title through the decree of the United States Supreme Court, which recognized the validity of said mortgage, and ordered all the property included therein to be sold to satisfythe same.” That “ the State having authorized this act of mortgage, under and by virtue of which said parties acquired rights, is estopped from impeaching the same, and declaring it a nullity. Rights thus acquired can not be destroyed by subsequent legislation.” 41 An. 902 and 903.
On this hypothesis we held, in that case, that “ the plaintiff has an apparent legal title to the land by virtue of the sale to satisfy a mortgage specially authorized by the State of Louisiana. By the act of the General Assembly authorizing said mortgage, the State is estopped from disputing the title and setting up title in herself; the original grantor (of the railroad company) and the United States government can only take advantage of the non-performance of the condition subsequent attached to the grant. This may be done by legislative act or judicial construction. The government of the United States has made no assertion of the forfeiture, and the legal title to said land will remain in the plaintiff until there is some as *1017 sertion of ownership on the part of the Federal government for the breach of the condition by directing the possession and appropriation of the land, or that it be offered for sale, or for settlement.”
In reference to this question, upon deliberate reflection, our minds remain fixed and unaltered. Defendant’s counsel cite us, with great reliance, to the opinions of the Supreme Court in Schulenburg vs. Haniman, 21 Wall. 44, and Farnsworth vs. Minnesota and Pacific Railway Company, 92 U. S. 49, as announcing a different doctrine.
But our reading of the former serves only to confirm our previously expresssed opinion, for in the opinion we find the following, viz:
“ The provision in the act of Congress of 1856, that all lands remaining unsold after ten years shall revert to the United States, if the road be not then completed, is no more than a provision that the grant shall be void if a condition subsequent is not performed.
And it is settled law that no one can take advantage of the nonperformance of a condition subsequent annexed to an estate in fee but the grantor or his heirs, or the successors of the grantor, if the grant proceed from an artificial person; and if they do not see fit to assert their right to enforce a forfeiture on that ground, the title remains unimpaired in the grantee. * * * And the same doctrine obtains when the grant upon condition proceeds from the government; no individual can assail the title it has conveyed on the ground that the grantee has failed to perform the conditions annexed.”
This opinion was rendered in 1874, and that in the Farnsworth case in 1875, Mr. Justice Field being the' organ of the court in each case. To show the distinguishing characteristics of the latter case from those of the instant case, we will make the following pertinent extract, viz:
“The parcels thus earned were excepted from forfeiture. It was certainly competent for any company to subject its property, rights and franchises conferred or attempted to be conferred by the act of May 22, 1857, or derived from any other source, to this liability. Its assent, in this respect, was one of the conditions upon which it received the loan of the State credit, provided by the constitutional amendment. When the assent was given, the relation of the State to the land and connected franchises was precisely as though a condition had been originally incorporated in the grant. (Italics are ours.)
*1018 “The mortgage or deed of trust not having been'executed until after the amendment was accepted, and the holding of the lands of the company, with its rights, privileges and franchises, having been thus made dependent upon the completion of the road within the periods prescribed, the beneficiaries under that instrument took whatever security it offered, in subordination to the rights of the State, to enforce the forfeiture provided.”
In that case it is manifest that a State constitutional amendment supervened whereby additional conditions were imposed upon the grant than those which were originally stipulated in the granting act of Congress, and hence the difference in the opinion from ours in the Sledge case, the granting act of the State in 1857 being identical with that of Congress.
But in the Sledge case we found that the road “was not completed within the ten years prescribed by the act of Congress, but was completed and finished ‘ out of time,’ in July, 1884, when the Governor certified to the Secretary of the Interior of its entire construction between the termini and along the line proposed in the act of Congress donating the land for the construction of said road.” 41 An. 900.
In this manner the condition subsequent was fulfilled. The company certainly had the right to construct the road “out of time,” as no intervening effort to forfeit the land had been made by act of Congress or judicial proceedings. 97 U. S. 291; 9’Wall. 96; 115 U. S. 307; 106 U. S. 361; 103 U. S.430.
When lands thus granted have been listed, at the instance of the grantee, and maps thereof are made and filed with the Secretary of the Interior, they are withdrawn from sale and entry, and are not, thereafter, subject to settlement or homestead by settlers. Lists of land thus certified to the State by the Commissioner of the General Land Office convey as complete titles as patents, and are not thereafter susceptible of preemption. U. S. Rev. Stat. 2449; Frasher vs. O’Connor, 115 U. S. 102; Morrow vs. Fletcher, 116 U. S. 381.
Recognizing this principle, we said in Sledge’s case:
“The land in controversy was withdrawn from public sale and entry before the defendant went on the same. His entry thereon was unlawful, and as he sets up no title other than his trespass, he can not dispute the apparent title of the plaintiff. Stilse vs. Sehull, 41 An. 816.”
*1019 The defendant is exactly in Sledge’s situation.
At most, the repealing act of 1879 had the effect of repealing the .grant of the State to the railroad company of 1857, and of restraining heT grant from the government of the United States.
That grant having never been revoked by act of Congress or judicial decree, it is impossible for the defendant to take anything thereby, because the condition subsequent has been fulfilled by the completion of the road and the acceptance of the State as grantee; and the trust is at an end, and the title of the company completecF- .and rendered indefeasible. Under this state of facts, the United' States government could not, in our opinion, recover the lands by' •suit or forfeiture from the company; and the defendant could not « by any length of possession acquire a homestead upon it.
Confessedly, the defendant has no title, and does not occupy the'' position of a good faith possessor. True it is that our predecessors • have held frequently, and correctly held, that actual settlers on the ■■ publie domain open to sale and preemption, can not be considered as; trespassers even as against the government. 6 An. 648; 5 An. 686,-Certainly not. But defendant’s case is different. Plaintiff holds a paper title out of the government, and the lands were previously -withdrawn from sale and homestead. They have passed into the «domain of private property quoad this controversy and the homestead laws are, at least, held in suspense. Defendant is a trespasser, and not entitled to the value of improvements. But we think it equitable and right that he should be relieved from the plaintiff’s claim for rents and damage, considering one demand as the just equivalent of the other.
The judgment must be reversed on the principles of law herein assigned, as well as on those announced in Railroad Company vs. Sledge, which is unreservedly affirmed.
It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed;' and it is further ordered and adjudged that the plaintiff be and he is hereby decreed the owner of the property claimed in his petition, and all the improvements thereon; and that • all the other demands of the plaintiff for rents and damages be extinguished and compensated by the defendant’s reconventional demand, and that the defendant and appellant be taxed with all costs in both courts.