## In re LITERARY DIGEST, Inc.
### No. 132.

Circuit Court of Appeals, Second Circuit.
Jan. 15, 1940.

CLARK, Circuit Judge, dissenting in part.

Zalkin & Cohen, of New York City, (Israel Akselrod, and Barney B. Fensterstock, both of New York City, of counsel), for appellant.

Milton H. Goldson, of New York City, for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

On March 16, 1938, The Literary Digest, Inc., filed a voluntary petition for reorganization under the provisions of Sec. 77B, of the Bankruptcy Act, 11 U.S.C.A. § 207, in the District Court for the Southern District of New York. The petition was approved the next· day and on the following May 24th an order providing for the liquidation of the· debtor was entered.

On September 3, 1938, Publishers Guild, Inc., filed a claim in the proceedings and amended its claim on November 4, 1938 by increasing it to the sum of $40,743.69 as its damages resulting from an alleged breach by the debtor of a contract it had with the claimant. The matter was referred to a referee who heard the parties on the question of breach of contract before going into the matter of damages and who sustained the trustee's objection to the claim and made an order disallowing it. The district court reversed the order of the referee; reinstated the claim; and ordered the matter returned to the referee to take further testimony and assess the damages. This appeal followed.

On August 13, 1937 the debtor, then the publisher of a weekly magazine known as The Digest, made a contract with the claimant, an organization which sold books and other articles in combination with subscriptions to magazines, in which the debtor agreed to accept, at prices stated, subscriptions for The Digest for one, two, or three years and to allow the claimant certain amounts for expenses incidental to obtaining the subscriptions. In consideration for that the claimant agreed to secure an average of one thousand subscriptions a week for The Digest commencing December 1, 1937 and to obtain

them by offers which would conform to certain standards not now important.

Both parties carried out the contract until the debtor suspended publication of The Digest on February 19, 1938; a little less than a month before it filed its petition for reorganization. Publication of The Digest was not resumed and the debtor has since been unable to fill subscriptions for it.

For a time thereafter the claimant was led to believe that publication might be resumed and continued to sell some of its merchandise in combination with subscriptions to The Digest. As a result, it had in May 1938 a good many subscriptions to The Digest which the debtor was bound to accept under the contract of August 13, 1937 but which the debtor could not fill because The Digest was not being published.

On May 11, 1938, the debtor made an arrangement with Time, Incorporated, whereby the latter agreed to supply its magazine Time to all subscribers of The Digest who would accept it. The claimant then undertook to get its customers to agree to the substitution of Time for The Digest and succeeded in some twenty-six thousand instances. No claim is now made for damages as to that many subscriptions.

About one thousand of the claimant's customers refused to receive Time in lieu of The Digest and on each such subscription Time, Incorporated, later paid the claimant sixty cents to secure a cancellation of those subscriptions.

Negotiations between the debtor and the claimant were carried to the point where the debtor wrote the claimant on May 12, 1938 in a letter as follows:—"This is to confirm our mutual agreement to terminate as of the commencement of business May 12, 1938, our memorandum of agreement dated August 13, 1937, and to waive and release all further rights and obligations arising thereunder after said date. It is expressly understood, however, that this shall not affect or modify any existing rights and obligations in respect of subscriptions which were secured by your agents and accepted by you on or before May 11, 1938 and your orders for which were delivered to us prior to the date hereof".

At the foot of this letter was the following confirmation signed by the claimant; "We hereby confirm the foregoing agreement this 12th day of May 1938."

The trustee of the debtor insists that there was no breach of the August 13th contract which would give rise to a claim by this claimant since the entire obligation thereunder of the debtor to the claimant was to accept subscriptions; that if, after such acceptance, the subscriptions were not filled by the debtor the only claims allowable would be to those to whom the claimant had sold the subscriptions and to whom the magazine was to be delivered. But we cannot agree that that contract is to be so construed. The parties were independent contractors. The debtor knew that its magazine was being sold in combination with others and with merchandise and that the only contracts with the persons who were to receive The Digest were those made with them by the claimant. There was no contract made, or agreed to be made, by the debtor with those to whom The Digest was to be sent. The precise agreement of the debtor was "to accept subscriptions for The Digest from" the claimant. The claimant was the subscriber and became entitled to have the magazine sent to its customers who were merely its nominees to receive it. So the failure of the debtor either to accept the subscriptions tendered by the claimant or to send the magazine to its nominees after acceptance was a breach of the contract of August 13, 1937 for which the claimant may prove such damages as it sustained provided subsequent arrangements are no bar.

However, as to the subscriptions which were cancelled upon the payment to the claimant by Time, Incorporated of sixty cents each the referee found that there was an accord and satisfaction which left the claimant no provable damages. While the evidence is not very full upon that point and the district judge was doubtful of its sufficiency, we agree with the referee that any claim on that score has been met by proof of an accord and satisfaction. When claimant cancelled the subscriptions in return for the payments it received it no longer was a subscriber to The Digest and without showing that the payment was received only to lessen the damages with some reservation of its right to seek further redress from the debtor the claimant deprived itself of any basis for a claim based on cancelled subscriptions. See, Paine v. Standard Plunger Elevator Co., C. C., 192 F. 75; affirmed, 3 Cir., 203 F. 242. The payment it received for each cancellation is also to be treated

as the consideration for its release of the obligation of further performance in respect to those subscriptions. Coletti v. Knox Hat Company, 252 N.Y. 468, 169 N.E. 648. Though the payments were not made by the debtor, they were made by one under contract with the debtor to fill the subscriptions by the substitution of Time if that magazine would be accepted and it is to be taken for granted from the debtor's reliance upon the accord and satisfaction that it was made with its consent. Synder v. Pharo, C. C., 25 F. 398. See, also Morris v. Giddings, 115 U.S. 300, 6 S.Ct. 65, 29 L.Ed 403.

The claimant sold 7,630 subscriptions to The Digest which were neither entirely filled by the substitution of Time nor cancelled in consideration for the payment made to the claimant by Time, Incorporated. The defense as to these rests solely upon the above quoted letter of May 12, 1938 approved that day by the claimant whereby it released the debtor from all further obligations arising under the contract after said date with the statement that the release would not cover "existing rights and obligations in respect of subscriptions which were secured by your agents and accepted by you before May 11, 1938 and your orders for which were delivered to us prior to the date hereof". The subscriptions were all accepted by the claimant from its agents before May 11, 1938 but were not delivered to the debtor until May 12th. They were sent in a letter dated that day together with a check for the amount due on their account but it does not appear whether they were sent before or after the letter of release was confirmed by the claimant. It was shown that on the morning before the claimant received the letter it was told by the debtor to send in all the subscriptions it had. It also appeared that after the subscriptions had been sent to the debtor its president told the claimant's president by telephone that he was in doubt as to whether Time would accept them and claimant's president then, at the suggestion of the debtor's president, stopped payment on the check which had been sent with them. It further appeared that subsequently Time, Incorporated, did accept 4,500 of those subscriptions. It seems to us that the debtor's letter of May 12th which was confirmed by the claimant was a clear expression of their agreement to terminate the contract of August 13, 1937 as of the commencement of business on May 12th to the end that the debtor was thereafter under no obligation to take or fill any subscriptions except those the claimant had obtained before May 11th and delivered to the debtor before May 12th. The contract of August 13th provided that: "This agreement may be cancelled by a 120 day notice by either party or if any proved violation of this agreement occurs the agreement may be cancelled in 60 days". The letter of May 12th shows a mutual agreement to substitute an immediate termination of the debtor's obligation to accept any more subscriptions from the claimant for the provision for cancellation on notice. After the commencement of business on May 12th, the debtor was, therefore, under no obligation to accept additional subscriptions tendered by the claimant. The first sentence of the letter plainly states that that was to be the effective time of the termination of the contract as to "all further rights and obligations". The last sentence as clearly shows that the parties intended that the debtor's continuing obligation as to subscriptions should be confined to those "which were delivered to us prior to the date hereof". It was but a redundant statement of part of their agreement as shown by the first sentence anyway, which makes plain the intent of the parties to release the debtor from any obligation to accept subscriptions it had not received before the commencement of business on May 12, and in no way restricts or enlarges their agreement in that respect. The reference in the first instance to the commencement of business May 12th excludes any possibility of ascribing to the later expression "prior to the date hereof" the actual time during the business day of May 12th on which the claimant confirmed the termination agreement since it became effective as of the commencement of business that day and did away with any obligation of the debtor to accept subscriptions during that day. Besides that, the claimant failed to prove that it delivered any subscriptions to the debtor on May 12th before it actually confirmed the termination agreement and no attempt was made to reform that agreement. It is binding upon the parties according to its plain language and is a bar to that part of the claim based upon subscriptions delivered to the debtor on May 12th.

The order is reversed with directions to disallow the claim in full.

CLARK, Circuit Judge (dissenting in part).

I have grave fear lest we are misreading the debtor's letter of May 12, 1938, which was agreed to by the claimant; and hence I feel that the court below exercised wise discretion in returning the matter for the taking of further testimony. The referee did not pass directly upon the meaning of this letter, nor did the District Court, except to call for further exploration of its purpose and effect, as well as of the amount of subscriptions involved (some of this group were later accepted by Time) and hence of claimant's damage. Particularly do I feel the need of such exploration because I read such evidence as there is somewhat differently than do my brothers.

After the Digest suspended publication on February 19, 1938, claimant continued to accept subscriptions because debtor insisted the suspension was only temporary and objected to notice to possible subscribers; moreover, claimant could not at once stop activity by its sales force over the United States and Canada. Debtor of course knew of these subscriptions, and asked claimant to hold them; when it developed a day or two before May 12, 1938, that Time might take over the Digest subscription list, debtor's president, Havell, told claimant that he could accept all of the subscriptions it was holding and urged it "to have them there at a certain time because the contract with Time required that the stencils be cut by a certain hour." So on May 12, claimant sent debtor a statement of these subscriptions, together with its check for $2,591.13. Then Havell telephoned Hocking (claimant's president) that he doubted that Time would accept these subscriptions and suggested that payment of the check be stopped, as was done. I think it reasonably clear that the letter of May 12, 1938, came after that and the excepting provision of the second sentence was made in the light of this situation. Hocking testified on cross-examination that when he signed this agreement he spoke to Havell of these subscriptions being held for the Digest and that Havell was aware of them anyway continuously from the time "they" suspended publication, and had asked claimant to hold them. Then Hocking was asked directly if, when he agreed to the letter, Havell asked him to mail in the subscriptions then, to which he answered, "I believe I saw him the morning before I received that and he told me to send in all the subscriptions I had," which he did.

If I am wrong as to this, the evidence is at least strong enough to call for further proof rather than summary rejection of the claim. It is certainly clear that claimant had these subscriptions on hand for debtor's benefit, and if there was not a technically formal acceptance, at least both sides knew and acted on that basis, as, of course, was necessary under the original contract of August 13, 1937, as we have construed it. In any event, debtor had a definite obligation to claimant, for refusal to accept would be a breach and so would acceptance without "servicing" of the subscriptions. The debtor chose the language used in the letter; if necessary, it should be construed against it. Termination of all future rights and duties which might arise under the original contract was natural in view of debtor's financial straits; termination of already accrued obligations could hardly be other than an unexpected windfall to debtor and charity or stupidity on the part of claimant.

The letter itself is consistent with what might thus be normally expected. The second sentence is clearly an 'excepting' provision which does not make sense under the circumstances here disclosed unless it excepts these very subscriptions. And the language chosen, while not a model of clarity, is apt for this result and, as I look at it, not for the result stated in the opinion. Where parts of a day are important, "date" means "time" and "prior in date" means "prior in time." Brown v. Hartford Ins. Co., 3 Day, Conn., 58, 67 (insurance policy); McLean v. Sworts, 69 Minn. 128, 71 N.W. 925, 65 Am.St.Rep. 556 (statute as to process); 17 C. J. 1130; Webster's New International Dictionary, 2d Ed., "date * * * The point of time at which a transaction or event takes place, or is appointed to take place; a given point of time." Hence "prior to the date hereof" means "prior to the time of this agreement," the "hereof" making the reference specific, just as the "said" of "after said date" in the first sentence makes that reference specific to the time there stated. Otherwise the second or "however" sentence is then superfluous. Further there is then an extra superfluity at its end in the differentiation between subscriptions accepted by claimant "on or before May 11, 1938," and orders delivered to debtor "prior to the date hereof." The former

expression is broad enough to include and make unnecessary the latter, unless the debtor wished to make a distinction between the two times, as under the circumstances he might (thus preventing the addition of new subscriptions received that morning to those excepted from the release provision). I believe this reasonable explanation of the contract should not be rejected without further proof that such was the parties' intent.