**WOODLAND LIMITED PARTNERSHIP, et al., Appellants,**

v.

**Erik B. WULFF, Appellee.**

No. 03–CV–266.

District of Columbia Court of Appeals.

Argued June 3, 2004.

Decided Feb. 17, 2005.

Gaspare J. Bono, with whom Adrian P.J. Mollo, Washington, DC, was on the brief, for appellants.

David U. Fierst, Washington, DC, for appellee.

Douglas K. Spaulding, Washington, DC, for Reed Smith LLP, as amicus curiae.

Before FARRELL, RUIZ and GLICKMAN, Associate Judges.

RUIZ, Associate Judge:

This case arises out of a partnership derivative action filed by appellee, Erik B. Wulff, alleging that appellants, Colin Halpern, Gail Halpern, Woodland Limited Partnership, Woodland Group Corporation, and H.S. Real Company, LLC ("Woodland" or "appellants"), engaged in various improper actions as fiduciaries of Woodland Limited Partnership. Appellants counterclaimed arguing that the one percent interest in Woodland that Wulff claims gives him standing to bring the derivative action was actually owned by his former law firm, Reed Smith LLP, and that the law firm had assigned its ownership interest back to appellants. Appellants filed a claim for arbitration pursuant to the terms of the law firm's partnership agreement with Wulff to determine whether Wulff or the law firm owns the one percent interest in Woodland. The trial court granted Wulff's emergency motion to stay the arbitration proceedings after concluding that Reed Smith's assignment of the interest to appellants had not transferred the right to arbitrate the ownership dispute with appellee pursuant to the law firm's partnership agreement with him.

Appellants assert that, as assignees of Reed Smith, they succeeded to the law firm's right to arbitrate Wulff's claim of ownership. Because Wulff no longer contests that the right to arbitrate transferred along with the assignment of the ownership interest,[1] the trial court's grant of Wulff's motion to stay arbitration proceedings cannot be sustained as it is premised on the view that appellants did not succeed to the law firm's right to arbitrate under the law firm's partnership agreement.

---

1. In his brief to this court Wulff asserted that the trial court did not err in staying the arbitration because Reed Smith's assignment of the one percent interest to Woodland did not also transfer the law firm's right to arbitrate under the law firm's partnership agreement.

Shortly before oral argument Wulff informed the court that he no longer contested that Reed Smith assigned to appellants the right to arbitrate based on new evidence that was disclosed to him by the appellants.

Wulff had argued an alternative ground for denying arbitration—that appellants have waived their right to arbitration by actively participating in the litigation—which the trial court did not consider. We now hold that the question of waiver should be decided by the arbitrator. We therefore reverse the trial court's order and remand the case so that Wulff's waiver argument can be addressed by the arbitrator.

## I.

## BACKGROUND

In 1993, the law firm of Reed Smith LLP ("Reed Smith") was retained as legal counsel for the formation and development of Woodland Limited Partnership and in connection with the acquisition of the franchise rights for Domino's Pizza in the United Kingdom. Wulff, who was then a partner at Reed Smith, supervised the law firm's work for Woodland. In December of 1993, he received a one percent ownership interest in Woodland Limited Partnership. It is undisputed that Wulff did not pay for the Woodland interest. Wulff asserts that the ownership interest was a gift; appellants contend, however, that he received the one percent ownership interest as compensation for legal services provided to Woodland by the law firm. According to Reed Smith, Wulff did not disclose his receipt of the one percent interest, and the law firm did not learn about it until December of 2001. Wulff counters that an associate at Reed Smith at the time (now a partner), was present when his father (one of the appellants) conveyed the one percent ownership interest to Wulff. As a result, Wulff con-tends, the firm had knowledge of the conveyance and impliedly approved.

On March 13, 2001, Wulff filed a derivative action alleging that appellants wrongfully took assets from Woodland Limited Partnership, the entity in which Wulff claims to own a one percent interest. Through discovery, appellants became aware of the partnership agreement between Wulff and Reed Smith, which provides that all compensation and remuneration for legal services or any other business activity is not the property of the individual partner but of Reed Smith. The agreement also provides that:

> Any disagreement or dispute between one or more Partners, former Partners, Estates or successors on the one hand and the Partnership on the other, arising under or related to any provision of this Agreement or any aspect of the business, properties and affairs of the Partnership or of the rights, duties, or obligations or liabilities of any of the foregoing persons shall be submitted to final and binding arbitration, pursuant to the rules then in effect of the American Arbitration Association . . . .

Based on this partnership agreement, appellants filed an answer in the derivative action and counterclaimed for a declaratory judgment that Wulff is not the owner of the one percent interest and therefore lacks standing to bring the derivative action. On December 31, 2001, Reed Smith sent a letter to appellants disclaiming any ownership interest it may have in the one percent interest in Woodland Limited Partnership and tendering it to that Partnership.[2] On August 23, 2002, appellants Colin Halpern, Gail Halpern and Woodland Limited Partnership filed a demand for

**2.** The letter states: "If at any time it is determined that Reed Smith holds any ownership interest in Woodland Limited Partnership, Reed Smith hereby disclaims any such owner-ship interest and agrees to tender such ownership interest to Woodland Limited Partnership for cancellation."

arbitration with the American Arbitration Association seeking resolution of the dispute with Wulff and Reed Smith "regarding ownership of a 1% ownership interest in Woodland Limited Partnership." A corresponding motion to stay proceedings in the derivative action pending arbitration was filed in Superior Court on August 27, 2002. The trial court initially granted the stay on November 26, 2002. Wulff contested the arbitrability of the issue of ownership as between Woodland and himself, however, arguing that Woodland was not a party to the law firm's partnership agreement, and that, although Reed Smith assigned the one percent interest to Woodland, that assignment did not include the agreement to arbitrate contained in the partnership agreement. The trial court reversed itself when, on March 10, 2003, it granted Wulff's emergency motion to stay the arbitration after determining that Woodland's claim of ownership was not arbitrable because there was no evidence that Reed Smith had assigned its arbitration rights to appellants. Appellants filed a timely notice of appeal from the trial court's order staying the arbitration proceedings. *See Umana v. Swidler & Berlin,* 669 A.2d 717, 723 (D.C.1995) (noting that interlocutory orders denying arbitration are immediately appealable under D.C.Code § 16–4317(a) (1989)).

## II.

## DISCUSSION

■ Under general principles of contract law the assignee of an interest has the same rights as the assignor and, as a result, the assignee can enforce those rights by the same remedies available to the assignor. *See* ARTHUR L. CORBIN, 9 CORBIN ON CONTRACTS, § 905 (Remedies Available to Assignees) (2002). Appellants therefore contend that Reed Smith's letter assigned its rights in the one percent own-

ership interest to Woodland along with the right to enforce its ownership interest in Woodland through arbitration, as provided under the terms of the law firm's partnership agreement. As noted, see *supra,* note 1, Wulff no longer contests the validity of the assignment and agrees that appellants have a right to seek arbitration.

■ Wulff argues, however, that appellants waived their right to arbitration concerning the ownership interest by actively participating in the derivative action litigation. Under District of Columbia law, a written agreement to arbitrate future disputes arising out of an existing contract "is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." D.C.Code § 16–4301 (2001). Thus, the right to compel arbitration can be waived like any other contractual right. *See Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.,* 261 U.S.App. D.C. 284, 286, 821 F.2d 772, 774 (1987); *Cornell & Co. v. Barber & Ross Co.,* 123 U.S.App.D.C. 378, 379, 360 F.2d 512, 513 (1966). The test for determining whether there has been a waiver of the right to arbitration is "whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right." *Nat'l Found. for Cancer Research,* 261 U.S.App.D.C. at 286, 821 F.2d at 774. Any ambiguity as to the scope of the waiver must be resolved against waiver and in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "[M]ere 'participation' in a lawsuit is probably not enough to support a finding of waiver ... 'active' participation or 'other action inconsistent with [the] right to arbitration' " is required before a finding of waiver can be made. *Hercules & Co. v. Beltway Carpet Serv.,*

*Inc.,* 592 A.2d 1069, 1075 (D.C.1991) (citation omitted).

 Wulff contends that appellants acted inconsistently with their belated claim for arbitration by actively participating in the litigation. Specifically, he notes that appellants filed an answer and counterclaim, participated in discovery, and filed various motions. Because appellants' right to arbitration, if any, arose from the assignment of the one percent interest by Reed Smith on December 31, 2001, any active participation in the litigation prior to the assignment cannot constitute evidence of waiver. As noted, the trial court did not reach the waiver argument, and the record on appeal is insufficient to ascertain the dates and content of the motions filed by appellants between December 31, 2001, when the assignment took place, and August 23, 2002, when appellants demanded arbitration. Although Wulff's brief includes a list of actions taken by appellants and rulings by the trial court that in his view evidence appellants' active participation in the litigation, the list does not include all the dates of the listed actions nor does it distinguish between those that relate to arbitrable issues and those that pertain to non-arbitrable issues.[3] *See id.* (noting that filing interrogatories and seeking summary judgment on non-arbitrable counts does not constitute waiver of right to arbitrate arbitrable counts in same complaint). Nor is there support in the record on appeal for these assertions.

 ▪More fundamental, however, is the question whether the court or the arbitrator should decide the issue of waiver. This is a question we have not previously addressed.[4] In *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002), the Court held that whereas "a gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide," the question of the applicability of a particular rule of the specific arbitration system agreed upon by the parties (in that case the NASD Uniform Submission Agreement) was for the arbitrator, who was well-qualified to address the issue. The allocation of decision-making between court and arbitrator is based on the fact that "the arbitrator's authority derives from the consent of the parties." *Grad v. Wetherholt Galleries,* 660 A.2d 903, 908 (D.C.1995) (citing D.C.Code § 16–4301; *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 942–43, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Thus, where a party challenges the arbitrability of a dispute, it is the very authority of the arbitrator to decide that is at issue, and the presumption is that the court must first settle the basic contractual question, unless the parties "clearly and unmistakably provide otherwise." *See id.* (quoting *AT & T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). But once that basic question has been resolved in favor

**3.** Wulff represents in his brief that on March 4, 2002, appellants were sanctioned by the trial court for failure to comply with discovery; that on April 5, 2002, appellants filed a motion for summary judgment on their counterclaim; and that appellants filed a motion for summary judgment on appellee's claim on April 8, 2002. The record on appeal does not include copies of such motions or actions taken by the trial court, and the Superior Court docket sheet presented on appeal includes a great number of entries with the label "sealed."

**4.** Although this court has reversed a trial court's finding that a party waived its right to arbitrate by participating in litigation, *see Hercules & Co.,* 592 A.2d at 1072–75, it does not appear that the court was presented with the preliminary question of who should decide whether there had been a waiver.

of arbitration, the strong policy embraced in the statute in favor of enforcement of arbitration agreements, *see* D.C.Code § 16–4301, reverses the presumption so that it is for the arbitrator to resolve other "gateway" matters that the parties "would likely expect" that the arbitrator would decide. *Howsam,* 537 U.S. at 84, 123 S.Ct. 588. This includes "procedural questions which grow out of the dispute and bear on its final disposition," *id.* (quoting *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964)), and "allegations of waiver, delay, or a like defense to arbitrability." *Id.* (quoting *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 25, 103 S.Ct. 927). Even though the question of waiver in this case will turn on the degree and nature of appellants' participation in the court proceeding and—to that extent—considerations of efficiency might favor resolution by the trial court, we think that the parties' broad agreement to arbitrate "any dispute arising under or related to" the Reed Smith partnership agreement dictates that this question incidental to their dispute about ownership of the Woodland shares under that agreement be submitted to the arbitrator. *See Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 453, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (holding that question was for arbitrator in light of, *inter alia,* the arbitration contract's "sweeping language concerning the scope of the questions committed to arbitration"). Moreover, in this case, it is significant that the arbitration agreement provides that the arbitration is to be conducted pursuant to the rules of the American Arbitration Association.[5] *See id.* at 452, 123 S.Ct. 2402 (noting that dispute about "*what kind of arbitration proceeding* the parties agreed to" was for arbitrator). Specifically on the question of waiver, appellants assert that Wulff did not comply with the timing requirement of Rule 7(c) of the AAA's Commercial Rules in objecting to arbitration and that Rule 48 provides that "[n]o judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of that party's right to arbitrate." Thus, as in *Howsam,* the AAA arbitrator in this case should be well-placed to decide the question of waiver. 537 U.S. at 84, 123 S.Ct. 588.[6]

Therefore, having established that the dispute between the parties is subject to arbitration, we reverse and remand to the trial court with the instruction that it refer the matter to the arbitrator for resolution of Wulff's argument that appellants have waived their right to arbitration. In light of the deficiencies in the record we have noted concerning the proceedings in the trial court, see *supra,* note 3, the trial judge should make any necessary findings concerning the conduct of the litigation in court before referring the matter to the arbitrator for resolution of Wulff's procedural argument that appellants have waived their right to arbitration.

*So ordered.*

---

**5.** Appellants note that Rule 7(a) of the AAA's Commercial Rules gives the arbitrator broad authority to decide even questions of arbitrability—an issue that has been obviated in this case by Wulff's eventual recognition of the agreement to arbitrate.

**6.** We contrast *Grad,* 660 A.2d at 908, where we held that when objection to arbitrability was preserved during arbitration proceedings as permitted by D.C.Code § 16–4311(a)(5), continued participation in arbitration did not constitute waiver of the objection. Because in *Grad* the issue was whether the parties had agreed to arbitrate, the fact of the objecting party's participation in the arbitration went to the basic contractual question and was, therefore, for the court.