Joyce EVANS, Appellant/Cross–
Appellee,

v.

DREYFUSS BROTHERS, INC.
& Tenacity 919 L Street, LLC,
Appellees/Cross–Appellants.

Nos. 07–CV–454, 07–CV–957, 07–CV–678.

District of Columbia Court of Appeals.

Argued Oct. 15, 2008.
Decided May 14, 2009.

Andre P. Barber for appellant.

John J. Hathaway, with whom Thomas C. Mugavero was on the brief, for appellee.

Before REID, Associate Judge, and KING and FARRELL,* Senior Judges.

REID, Associate Judge:

This case involves a question as to whether the dispute between appellant, Joyce Evans, and appellees, Dreyfuss Brothers, Inc. & Tenacity 919 L Street, LLC, concerning the alleged breach of a settlement agreement and a consent judgment agreement, must be resolved in the first instance through an arbitration proceeding. The trial court lifted its stay and dismissed Ms. Evans' consolidated actions on the ground that arbitration is required. We affirm the judgment of the trial court.

## FACTUAL SUMMARY

The record before us shows that as of January 2004, Ms. Evans was a shareholder in the L Street Cooperative Association, Inc. ("the Cooperative"), the owner of a building located at 919 L Street in the Northwest quadrant of the District of Columbia. She occupied one of the units in the apartment building. On January 29, 2004, the President and Secretary of the Cooperative entered into a Replacement Redevelopment Agreement ("the Replacement Agreement") with Tenacity Group, LLC ("Tenacity"); the original agreement had been signed on January 12, 2004. The Replacement Agreement provided that each member of the Cooperative would be given an opportunity to purchase his or her unit under certain conditions, or would be paid a relocation allowance if he or she chose not to acquire the unit. An arbitra-

* Judge Farrell was an Associate Judge, Retired at the time of argument. His status changed to Senior Judge on January 23, 2009.

tion clause was included in the Replacement Agreement which provided, in part:

> Any dispute, claim or controversy arising out of or relating to the provisions of this Agreement shall be settled by a decision of a single neutral arbitrator under the auspices of, and in accordance with the applicable rules of, the Judicial Arbitration and Mediation Services, Inc. ("JAMS"). The decision of the arbitrator shall be final, binding and non-appealable, and judgment based on the arbitration decision may be entered in either the United States District Court for the District of Columbia, or the Superior Court of the District of Columbia. . . .

A dispute arose out of the Replacement Agreement, and Tenacity and five of the unit owners of the Cooperative, including Ms. Evans, proceeded to arbitration before a JAMS arbitrator.[1] While that arbitration was pending, Dreyfuss Brothers, Inc., t/a 919 L Street or t/a Tenacity 919 L Street, LLC, served a Complaint for Possession, which had been filed in the Landlord & Tenant Branch of the Superior court on May 2, 2005, on the arbitration respondents, including Ms. Evans ("L&T action"). Ms. Evans lodged an answer and plea of title to the complaint on August 26, 2005. In addition, on October 4, 2005, the arbitration respondents filed a motion, in the L&T action, to stay the arbitration.[2]

On January 20, 2005, Tenacity and Ms. Evans entered into a settlement agreement under which Ms. Evans agreed to vacate her unit and deliver the keys to Tenacity no later than April 30, 2006, in exchange for a monetary consideration of $215,000 for pain and suffering, provided she met certain conditions. These conditions included: a prohibition on disparagement, or objection to any of Tenacity's actions; the dismissal of Ms. Evans' Housing and Urban Development ("HUD") discrimination complaint against Tenacity, with prejudice, and any other complaints filed, including those with JAMS. The settlement agreement further provided that if Ms. Evans breached the agreement, she would "lose all of [her] rights and benefits under the [settlement] [a]greement." Yet another paragraph of the settlement agreement included essentially the same arbitration clause as appeared in the Replacement Agreement, and one other paragraph contained a confidentiality provision under which Ms. Evans agreed not to disclose the terms of the settlement agreement. In light of the settlement agreement, Dreyfuss Brothers, Inc. and Ms. Evans filed a consent judgment agreement in the L&T action on January 26, 2006, which memorialized the settlement agreement. The settlement agreement was not attached to the consent judgment agreement, "[d]ue to privacy concerns," but was "incorporated by reference."

On April 30, 2006, Ms. Evans vacated her unit and turned in her keys. Tenacity did not pay Ms. Evans the monetary consideration mentioned in their settlement agreement. Rather, on May 2, 2006, Tenacity sent Ms. Evans a letter advising her

---

1. In a letter to certain unit owners, dated December 14, 2004, counsel for Tenacity asserted, in part, that the Cooperative was in violation of the Replacement Agreement; members of the Cooperative would have to purchase their units by a date certain; Tenacity would convert the apartment building to a condominium; and that members of the Cooperative would have to vacate their respective apartment unit unless it was purchased on or before April 14, 2005.

2. In accordance with a December 15, 2005 requirement of the JAMS arbitrator, Dreyfuss Brothers, Inc. filed a motion, on December 20, 2005, to stay the L&T action pending resolution of the JAMS arbitration pertaining to Ms. Evans.

that she had "defaulted under numerous provisions of the settlement agreement ... and thus [was] not entitled to any of the rights and/or benefits set forth in the Settlement Agreement." Specifically, Tenacity accused Ms. Evans of (1) making disparaging comments about Tenacity to other residents of and employees associated with the L Street building, as well as to members and staff of the District's legislature; (2) failing to dismiss her HUD discrimination complaint against Tenacity; and (3) failing to abide by the confidentiality provision.

When Ms. Evans did not receive the monetary payment to which she believed she was entitled, she lodged a complaint against Tenacity in the Civil Division of the Superior Court on June 16, 2006, alleging Tenacity's breach of the settlement agreement, requesting rescission of that agreement, and seeking injunctive relief (temporary restraining order and preliminary injunction) to regain possession of her apartment unit. On June 19, 2006, Tenacity filed a motion to dismiss Ms. Evans' Civil Division complaint. On that same day, the trial court heard testimony and arguments on Ms. Evans' request for a temporary restraining order.[3] After hearing closing argument from Ms. Evans' counsel, the trial court summarized its reasons for denying Ms. Evans' motion for a temporary restraining order.

After the parties could not reach agreement during required mediation of Ms. Evans' complaint, the trial court entertained Tenacity's motion to dismiss and Ms. Evans' opposition. During a status hearing on July 7, 2006, the trial court announced that it considered Tenacity's dismissal motion to be "meritorious," and that "the case has to go to arbitration in light of the contract that was entered into." The court orally granted Tenacity's motion to dismiss, "referr[ed] the matter to arbitration pursuant to the settlement agreement," and stayed the case at Ms. Evans' request.

On July 12, 2006, the trial court held a hearing on Ms. Evans' request for a preliminary injunction.[4] That same day, Ms.

---

3. Ms. Evans' testimony concerned accusations by Tenacity that she had breached the settlement agreement and therefore was not likely to prevail on the merits of her complaint. She testified that she had said to others after January 20, 2006, that she "was not going to deal with Tenacity because they're very nasty people." While she had called HUD to indicate that she had accepted the settlement agreement, she acknowledged that she filed no papers to dismiss the HUD action. On cross-examination, Ms. Evans agreed that she had never filled out a loan application with Tenacity Mortgage with respect to the purchase of her apartment unit. During his testimony in behalf of Tenacity, Michael Postal, Chief Executive Officer and managing member of Tenacity 919 L Street, LLC, said Ms. Evans never applied for financing and never signed a unit purchase contract under the Replacement Agreement. After the settlement agreement was executed, Mr. Postal "received several voice mails" from Ms. Evans until approximately April 30, 2006. These messages referred to Mr. Postal and Tenacity as "a heartless devil" and "terrible, bad people." Similar messages were left for Tenacity's legal counsel and for its customer service representative. At least one message included the words "Jews and devils." Mr. Postal's conversations with other residents of the building revealed that Ms. Evans "had been telling other residents in the building all of the pertinent details" of the settlement agreement, including the monetary consideration. On cross-examination, Mr. Postal acknowledged that April 30, 2006, was a Sunday, that he did not receive the keys from Ms. Evans' apartment directly, but did have them by May 2, 2006. When recalled to the witness stand, Ms. Evans denied making any racial or disparaging comments about Tenacity or its personnel.

4. The trial court eventually denied as moot Ms. Evans' request for a preliminary injunction.

Evans filed in the L&T branch a motion to enforce the terms of the consent judgment agreement that had been lodged in January 2006. On July 17, 2006, Tenacity filed an emergency motion to show cause why Ms. Evans and her counsel should not be held in contempt for violation of the July 7, 2006 order referring her Civil Division complaint to arbitration. Ms. Evans responded on July 20, 2006 with a motion to alter the order granting Tenacity's motion to dismiss her complaint. Both motions were opposed.

Since Ms. Evans at that point had one complaint filed with the Civil Division and another with the L&T branch, both pertaining to the same settlement agreement and consent judgment agreement, the trial court referred the L&T action to the judge assigned to Ms. Evans' Civil Division complaint for rescission, breach of contract and injunctive relief. That judge held a status conference on July 20, 2006 to consider both Ms. Evans' motion to enforce the consent judgment agreement and her motion to alter the trial court's order referring the matter to arbitration.[5] Counsel for Ms. Evans argued that she could not afford to pay the costs of arbitration, because the arbitrators' rates are "$300 an hour" and because she occupied "section 8" subsidized housing.

The trial court issued two orders on August 3, 2006. In the order denying Ms.

Evans' motion to alter the dismissal order, the trial court again asserted that "[t]he dispute ... should be resolved by arbitration pursuant to [the parties'] settlement agreement." The trial court explained: "Where plaintiff [Ms. Evans] entered into a settlement agreement with the benefit of counsel which includes an arbitration provision, the Court does not find enforcement of the arbitration provision to be unconscionable especially where plaintiff already has sought to arbitrate a dispute related to the settlement agreement, and the arbitration rules provide for flexibility in the assignment of arbitration costs." In the second order, the trial court denied Tenacity's emergency motion to hold Ms. Evans and her counsel in contempt.[6]

In August and September 2006, Ms. Evans filed appeals of the trial court's orders relating both to her L&T and Civil Division cases. While these appeals were pending, Ms. Evans filed an emergency motion to lift the stay which the trial court had granted at her request; Tenacity opposed the motion. The trial court issued an order on February 28, 2007, denying Ms. Evans' motion to lift the stay, noting the appeals before this court, and requiring her "to show cause why [her] case should not be dismissed with prejudice for failure to proceed with arbitration." The trial court expressed its view that the stay must remain in place "until arbitration has

5. At the beginning of the hearing on July 20, the trial judge summarized the action it had taken on July 7, 2006: "I found that the agreement between the parties, the settlement agreement unambiguously included an arbitration clause, and dismissed the complaint, interpreted the motion to dismiss as a motion to compel arbitration and dismiss the complaint in favor of arbitration, and believed that the parties were going to be pursuing arbitration."

6. The court expressed great annoyance with Ms. Evans' counsel's effort to "justify" the

filing of the L&T enforcement action on the ground that "the consent judgment of in [L&T] Court is different from the settlement agreement filed in the civil action[,]" where "the consent judgment expressly incorporates the settlement agreement." Nevertheless, the trial court asserted that it was "willing to give [Ms. Evans'] counsel the benefit of the doubt that he did not act contumaciously but made a gross error in judgment." The court also found that Tenacity failed "to comply with the strict requirements of [Super. Ct. Civ.] Rule 11."

been concluded." Nevertheless, since Ms. Evans "does not intend to pursue arbitration because she cannot afford arbitration, and Defendant does not intend to pursue arbitration because it is not seeking any relief," the court concluded that it was "senseless to stay a case in perpetuity where neither party seeks to proceed with arbitration." Subsequently, this court dismissed Ms. Evans' appeals on March 14, 2007 because they were taken from non-final and non-appealable orders.

On March 22, 2007, the trial court denied Ms. Evans' motion to clarify its show cause order. In her response to the show cause order, Ms. Evans complained about the trial court's dismissal and show cause orders, asserting that the show cause order was "moot because the Court already dismissed this case on July 7, 2006," and that "[t]o the extent that the Court has not already dismissed the case, Evans, without waiving her right to appeal, informs the Court that she consents to this case being dismissed without prejudice."[7] After reviewing Ms. Evans' April 10, 2007 response to the show cause order, the trial court entered an order on April 23, 2007,

lifting the stay and dismissing the case without prejudice.

After this court dismissed Ms. Evans' first appeals, and following the trial court's April 23, 2007 order, neither Ms. Evans nor Tenacity proceeded to arbitration. Rather, Ms. Evans filed an appeal on May 3, 2007 of (1) the trial court's August 3, 2006 order which she stated denied her motion to enforce the settlement agreement in the L&T action (Appeal No. 07–CV–957) (the two August 3, 2006 orders actually denied Ms. Evans' motion to alter the trial court's order granting the motion to dismiss the complaint, and denied Tenacity's motion to hold Ms. Evans' counsel in contempt; these orders did not rule on the merits of Ms. Evans' enforcement action),[8] and (2) the trial court's orders of July 7, 2006 (dismissing her case and compelling arbitration), June 19, 2006 (denying her motion for a temporary restraining order), and April 23, 2007 (lifting the stay and dismissing her case without prejudice) (Appeal No. 07–CV–454). Tenacity filed a cross-appeal on July 6, 2007, of the July 7, 2006 order in so far as it lifted the stay (Appeal No. 07–CV–678).[9]

---

**7.** Ms. Evans' response to the show cause order also asserted, in part:

> The Court dismissed this case and refused to order that the parties commence arbitration proceedings. District of Columbia law plainly does not require that the Court maintain a superfluous stay in a case where the Court is simply waiting for "nothing" to occur. Rather, under District of Columbia law, a stay is only mandated when the Court has expressly ordered the parties to proceed to arbitration. *See* D.C.Code § 16–4302(d)....
>
> The Court's view of equity is inexplicably oppressive, as was its original suggestion that this case should be dismissed with prejudice for no reason. In April 2007 Evans is now being subjected to the indignity of having to explain why the Court should not dismiss a case that it already dismissed in **July 2006.....**

**8.** In her July 20, 2006 motion to alter the order granting the motion to dismiss, Ms. Evans raised her alleged inability to pay arbitration costs and argued: (1) the parties did not reach a binding arbitration agreement because she did not agree to pay arbitration costs; (2) the arbitration provision in the settlement agreement is unconscionable and hence unenforceable; and (3) the trial court erred by requiring arbitration without taking into account Ms. Evans' inability to pay for the costs of arbitration. The trial court had permitted Ms. Evans to proceed *in forma pauperis* in this matter.

**9.** Even after she lodged her appeal notices, on May 3, 2007, Ms. Evans filed a motion to reconsider and alter or amend the trial court's order of April 23, 2007, which was opposed by Tenacity and denied by the trial court on June 8, 2007.

## ANALYSIS

We begin with Tenacity's argument that this court lacks jurisdiction to hear Ms. Evans' appeal since "an order ordering arbitration is not a final order for purposes of appeal." In addition, Tenacity contends that Ms. Evans has waived her appeal of the trial court's April 23, 2007 order which lifted the stay and dismissed the case without prejudice. In her reply brief, Ms. Evans insists that the court has jurisdiction to review (1) the consent judgment entered in the L&T branch because it is a final order; and (2) the order dismissing her rescission case in favor of arbitration because, it too, is a final order. Furthermore, she contends that even if the rescission order is not final, this court should use its pendent jurisdiction to hear the case due to "substantial considerations of fairness." In addition, in her reply brief, she maintains that she has not waived her appeal of the April 23, 2007 order because "both the substantive legal errors raised by [her] and the relief requested in [her] brief are directed toward that specific order."

■■ Since subject matter jurisdiction raises a legal question, we conduct a *de novo* review.[10] Under D.C.Code § 11–721(a)(1), this court has jurisdiction over "final orders and judgments of the Superi-

or Court of the District of Columbia." As we have said previously, "any lack of finality is a bar to appellate review."[11] To determine finality, we generally examine whether a challenged order " 'dispose[s] of the whole case on its merits so that the court has nothing remaining to do but execute the judgment or decree already rendered.' "[12] The District of Columbia Uniform Arbitration Act specifies certain orders are final and thus appealable.[13] These do not include orders requiring arbitration, in contrast to orders denying motions to compel arbitration, which are appealable.[14] Moreover, an order which imposes a stay of litigation pending arbitration is not final and appealable.[15] With the exception of the issue of arbitrability, which must be determined by the trial court, questions concerning the arbitration proceeding generally are the province of the arbitrator, for example, procedural issues and waiver questions.[16]

■■ In analyzing the jurisdictional issue, we focus on the order of July 7, 2006, and the related order of April 23, 2007. Contrary to Tenacity's contention that the April 23, 2007 order is not properly before us because Ms. Evans made no argument in her main brief concerning this order, we read Ms. Evans' brief as implicitly discuss-

10. *Heard v. Johnson*, 810 A.2d 871, 877 (D.C. 2002).

11. *District of Columbia v. Pizzulli*, 917 A.2d 620, 624 (D.C.2007) (citations omitted).

12. *Heard, supra* note 10, 810 A.2d at 876 (citing *Dyer v. William S. Bergman & Assocs.*, 635 A.2d 1285, 1287 (D.C.1993)) (other citation omitted).

13. D.C.Code § 16–4317(a) specifies the following orders as final:

(1) An order denying an application to compel arbitration made under section 16–4302;

(2) An order granting an application to stay arbitration made under section 16–4302(b);
(3) An order confirming or denying confirmation of an award;
(4) An order modifying or correcting an award; and
(5) An order vacating an award without directing a rehearing.

14. *See Judith v. Graphic Commc'ns Int'l Union*, 727 A.2d 890, 891 (D.C.1999).

15. *See Moran v. Carey Limousine, Inc.*, 737 A.2d 532, 533 (D.C.1999) (citations omitted).

16. *See Woodland Ltd. P'ship v. Wulff*, 868 A.2d 860, 865 (D.C.2005) (citations omitted).

ing both orders, each of which must be interpreted as orders (1) favoring or compelling arbitration, and (2) determining arbitrability based on the explicit arbitration provision in the settlement agreement, and the incorporation of the settlement agreement into the consent judgment agreement. Moreover, Ms. Evans specifically listed the April 23, 2007 order in her notice of appeal.

■ The July 7, 2006 order was not appealable, as we concluded in dismissing Ms. Evans' first appeals on March 14, 2007. While an order which effectively denies arbitration is appealable, *see* D.C.Code § 16–4317(a)(1), an order dismissing a case in favor of arbitration, which is interpreted as "a motion to compel arbitration," is not appealable.[17] Some courts treat dismissals in favor of arbitration "as if they were orders to stay litigation," and they are not appealable.[18] Therefore, since the July 7, 2006 order dismissed Ms. Evans' complaint, thereby compelling arbitration, but stayed her case, it was not a final order.[19]

■ The trial court's April 23, 2007 order lifted the stay imposed in the July 7, 2006 order, and dismissed Ms. Evans' case

"without prejudice," just as she had requested. "[A] dismissal without prejudice 'renders the proceedings a nullity and leaves the parties as if the action had never been brought.' "[20] Hence, the trial court's April 23, 2007 order may be interpreted as a final order in the sense that there is nothing more for the trial court to do when confronted with the unwillingness of either party to comply with the court's order and to proceed to arbitration. Or, the April 23, 2007 order may be interpreted as a non-final, non-appealable order which has not resolved the merits of Ms. Evans' complaint against Tenacity, but which gives her the option of proceeding to arbitration, as the settlement agreement requires as a matter of law, or filing another lawsuit and starting the process again.[21] We need not pause to determine which of these interpretations is appropriate here because under either interpretation, we would affirm the trial court's order.

Assuming that the trial court's April 27, 2007 order may be viewed as a final, appealable order, we turn to Ms. Evans' arguments on appeal. In an effort to circumvent the principle that a dismissal without prejudice "leaves the parties as if

---

**17.** *Judith, supra* note 14, 727 A.2d at 891 (dismissal in favor of arbitration not final and appealable); *Hercules & Co. v. Beltway Carpet Serv.*, 592 A.2d 1069, 1071 (D.C.1991) ("denial of a motion to compel arbitration ... 'shall be deemed final' for purposes of an appeal") (citing D.C.Code § 16–4317(a)(1)). We are unpersuaded by Ms. Evans' argument that the orders dismissing her complaint in favor of arbitration do not compel arbitration because the trial court did not use explicit language compelling the parties to arbitrate. We have interpreted a trial court's order dismissing a case "in favor of arbitration" as an order compelling arbitration. *See Judith, supra,* 727 A.2d at 891, 892. The trial court conveyed this interpretation to the parties at a hearing on July 20, declaring that the court "interpreted [Tenacity's] motion to dismiss as a motion to compel arbitration." Under

these circumstances there can be no doubt that the trial court's order of July 7, 2006 compelled the parties to arbitrate.

**18.** *Id.* at 727 A.2d at 892 (citing *Seacoast Motors v. Chrysler Corp.*, 143 F.3d 626 (1st Cir.1998)).

**19.** *See Umana v. Swidler & Berlin, Chartered,* 669 A.2d 717, 721 (D.C.1995).

**20.** *Thoubboron v. Ford Motor Co.,* 809 A.2d 1204, 1210 (D.C.2002) (citations omitted).

**21.** If Ms. Evans elects to start with a new breach of contract or enforcement lawsuit, she would still be bound by the arbitration provision in the settlement agreement, which was incorporated into the consent judgment agreement.

the action had never been brought," and in order to forestall our affirmance of the trial court's judgment, Ms. Evans makes three arguments. First, she maintains that the trial court's order compelling arbitration is improper because Tenacity never showed that Ms. Evans "has previously refused to arbitrate," as required by D.C.Code § 16–4302(a). Such a showing is impossible, Ms. Evans argues, because "[i]nstead of seeking to arbitrate a dispute with [her], Tenacity simply accepted possession of the Residence from [her] and transferred the property to a third party without ever demanding arbitration." This argument actually claims that Tenacity breached the settlement agreement by not immediately giving Ms. Evans the monetary consideration mentioned in the settlement agreement. That claim involves the interpretation of the settlement agreement which is a matter, in the first instance, for the arbitrator. More fundamental, however, Ms. Evans misreads § 16–4302. That provision does not include the words "previously refused to arbitrate"; it reads, in part: "On application of a party showing an agreement [to arbitrate] and the opposing party's refusal to arbitrate...." Although Ms. Evans agreed to arbitrate an initial matter with Dreyfuss Brothers, Inc. (t/a Tenacity) regarding the Replacement Agreement, she has steadfastly resisted arbitration in this matter, and indeed, she has stated in writing that she has no intent of proceeding to arbitration. Hence, Ms. Evans' § 16–4302(a) statutory argument must fail since the settlement agreement requires arbitration and by her actions Ms. Evans has refused to arbitrate her claim regarding Tenacity's alleged breach of the settlement agreement.

Second, Ms. Evans contends that the trial court's order favoring arbitration was improper because Tenacity's "conduct is totally inconsistent with a party who desires to arbitrate a dispute," and therefore, Tenacity has "waived its right to seek arbitration of any dispute arising out of the [s]ettlement [a]greement." But the question of waiver is an initial question for the arbitrator.[22] Third, Ms. Evans maintains, even though she consented to it, that the trial court's dismissal order is improper because the arbitration provision in the settlement agreement is unenforceable and unconscionable since the costs of arbitration for her are prohibitive, and both the settlement agreement and the consent judgment agreement are silent as to who will bear the costs. She argues that "the trial court was required to conduct a hearing so that [she] could prove that she would likely incur the prohibitively expensive arbitration costs." But here, the trial court gave Ms. Evans an opportunity to present evidence, even though she did not raise the cost issue until her motion to alter the trial court's dismissal order. In fact, Ms. Evans presented testimony that the hourly rate of an arbitrator is $300 per hour, but Tenacity showed in response that JAMS' rules of procedure allowed flexibility in the allocation of the costs of arbitration. After considering the evidence, the trial court concluded in one of its August 3, 2006 orders that "the arbitration rules provide flexibility in the assignment of arbitration costs."

Nevertheless, Ms. Evans presses her argument, relying on a Supreme Court decision, which she interprets as holding "that a party may invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive."[23] But,

**22.** *See Woodland, supra* note 16, 868 A.2d at 865 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

**23.** *Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).

in that case, the Court "address[ed] the question whether an arbitration agreement that does not mention arbitration costs and fees [as in the case before us] is unenforceable because it fails to affirmatively protect a party from potentially steep arbitration costs."[24] The Court "conclude[d] that an arbitration agreement's silence with respect to such matters does not render the agreement unenforceable."[25] Furthermore, said the Court, "where ... a party seeks to invalidate an arbitration agreement on the ground that the arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."[26] Ms. Evans did not satisfy her burden. Although she had the opportunity to "make her record" on the cost issue by showing what actual costs she personally was likely to incur, she failed to do so, and we reject her effort to have this case remanded for a second opportunity on the cost issue.[27]

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.[28]

*So ordered.*

**24.** *Id.* at 82, 121 S.Ct. 513.

**25.** *Id.*

**26.** *Id.* at 92, 121 S.Ct. 513.

**27.** *See Musnick v. King Motor Co. of Fort Lauderdale,* 325 F.3d 1255, 1260 (11th Cir. 2003) (appellant "had his opportunity to make a record" "on the issue of 'prohibitive costs'" and the appellate court refused to remand for a second opportunity).

**28.** We do not consider Ms. Evans' argument that the trial court committed error by refusing to enforce the terms of the consent judgment agreement, because the trial court never issued an order on the merits of Ms. Evans' enforcement action.