Roy T. FIELDS, et al., Appellants/Cross–
Appellees,

v.

George E. TILLERSON III, et al.,
Appellees/Cross–Appellants.

Nos. 96–CV–1673, 96–CV–1675.

District of Columbia Court of Appeals.

Argued Sept. 30, 1998.
Decided March 4, 1999.

Charles Saunders, Washington, DC, for appellees/cross-appellants.

Paul M. Toulouse, Washington, DC, for appellants/cross-appellees.

Before STEADMAN, FARRELL and RUIZ, Associate Judges.

STEADMAN, Associate Judge:

George E. Tillerson III was a principal in the law firm of Roxborough & Tillerson, Chartered. Appellants obtained a legal malpractice judgment against the firm and Till-

erson individually in 1993 in the amount of approximately $300,000. The instant appeal arises out of the Fields' efforts to collect on the judgment by writs of attachment against the rents due on commercial rental property at 3001 Georgia Ave, N.W. The trial court by order dated August 28, 1996, quashed the writs after Tillerson asserted that, following the foreclosure on a second deed of trust, record title to the property was no longer in the name of the law firm but rather in Tillerson and his wife as tenants by the entireties, and thus exempt from execution for his sole indebtedness.

Subsequent to the granting of the order to quash, Tillerson sought further relief by filing a motion for "declaratory relief and protective order" on September 16, 1996. He asserted that a settlement agreement with the other principal of the law firm, Claude Roxborough, had fully satisfied the 1993 judgment and that all attempts of any type to execute upon the judgment should therefore be barred. The trial court denied this motion by order dated October 10, 1996.

The Fields appeal the grant of the motion to quash, contending inter alia that the quashing order was improperly entered without a hearing and without supporting findings of fact. Tillerson cross-appeals the denial of his motion for a protective order, contending that the trial court committed legal error in failing to apply the settlement agreement. We affirm the order denying the motion for a protective order but vacate the order quashing the writs of attachment and remand the case for further proceedings consistent with this opinion.

## I.

This dispute has its origins in the 1990 purchase by the Fields of a home in which title difficulties appeared following the closing. The law firm represented the Fields in the transaction. In 1993, the Fields subsequently obtained a malpractice judgment by default against both the firm and Tillerson individually for $292,174.32.

Subsequent to the entry of this judgment, the Fields filed a second suit, this one against Claude Roxborough individually, apparently at the insistence of the firm's malpractice insurer. On June 20, 1995, the Fields and Roxborough entered into a settlement praecipe whereby Roxborough agreed to pay the Fields $90,000. In the praecipe, the Fields also agreed that if a third law suit then pending established that they in fact had good title to the home, they would release the $292,174.32 judgment. The insurance company paid the Fields $75,000, but Roxborough was unable to pay the additional $15,000. Therefore, about a month later, on July 18, 1995, by stipulation of counsel for the Fields and Roxborough acknowledging that "the defendant is unable to comply with the terms of settlement," the praecipe of June 21, 1995, dismissing the Roxborough suit was set aside, the case was reinstated, and a judgment entered for $90,000 against Roxborough, to which the $75,000 was to be a credit.[1]

Collection efforts by the Fields then resumed on the 1993 judgment. In March 1996, the Fields began filing a series of writs of attachment against the rent due from tenants on the Georgia Avenue property. At the time the judgment was entered against the law firm and Tillerson on November 16, 1993, that property was in the name of the law firm as owner, subject to first and second deeds of trust securing promissory notes executed by the law firm, both dated February 19, 1993. On December 15, 1995, a foreclosure sale was held under the second deed of trust, but the foreclosure was apparently invalid because of a defect in advertising. On or about that date, in a series of events whose details are, to say the least, not clear,[2]

---

1. The consent judgment does not specifically so state, but the Fields acknowledge this credit in their brief. Tillerson makes much of the fact that the $75,000 was not returned to the insurance company after the rescission, but we do not think this affects the overall analysis. See note 3, *infra.*

2. Rufus Stancil was the payee of the promissory note secured by the second deed of trust. Apparently Stancil bid on the property at the December 15, 1995, foreclosure sale, but immediately thereafter, George Tillerson, who was present at the sale, asked to buy the note, paid the $35,000 balance outstanding, and received the note endorsed by Stancil "pay to the order of George

the Tillersons apparently became the indorsees of the promissory note secured by the second deed of trust and held a renewed foreclosure sale on May 15, 1996. The Tillersons asserted that they purchased the equity interest at this foreclosure sale and received a trustee's deed to the property, subject to the first deed of trust, conveying the property to them as tenants by the entireties. The trustee's deed was recorded on July 11, 1996.

The Tillersons' original motion to quash, filed on May 17, 1996, was denied by the trial court on July 3, 1996. However, after the Tillersons had recorded their trustee's deed, they filed an "emergency motion to amend order" on July 18, 1996. The Fields filed a response on July 30, 1996, in which they raised their various theories and asked for thirty days additional time to obtain deposition testimony if the trial court was not prepared to deny the motion forthwith. Nonetheless, the trial court granted the motion on August 28, 1996, as to all outstanding writs of attachment not served and answered prior to the recordation date of July 11, 1996. The Fields filed a timely appeal of this order after the denial of their motion for reconsideration (96–CV–1673).

Thereafter, on September 16, 1996, the Tillersons filed a "motion for declaratory relief and for protective order." In the motion, the Tillersons claimed that any obligation arising out of the 1993 judgment had been fully satisfied by the terms of the June 20, 1995, settlement of the suit against Roxborough individually. The trial court denied the motion on October 10, 1996, which is the subject of the cross-appeal (96–CV–1675).

## II.

We address first the denial of the motion for declaratory relief, since if that motion should have been granted, it would moot out the direct appeal from the order quashing the writs of attachment.

The Tillersons' theory, in essence, as clarified at oral argument, is that George Tillerson was a third-party beneficiary of the settlement agreement in the Roxborough litigation, and that the stipulated rescission of that settlement was therefore ineffective without his consent.[3] He directs our attention to the terms of the praecipe of settlement, signed by the attorney for the Fields and the attorney for Roxborough and filed June 21, 1995, which read:

The Clerk of said Court will mark this case as settled and dismissed with prejudice and that no post judgment execution proceedings will be taken in case 93ca3675 [the suit against the law firm and Tillerson] and that judgment in 93ca3675 will be released when the issue of the Fields' title is resolved in their favor. The amount of the settlement is Ninety Thousand Dollars ($90,000)[.]

■ A third party to a contract " 'may sue to enforce its provisions if the contracting parties *intend* the third party to benefit directly thereunder.' " *Johnson v. Atlantic Masonry Co.*, 693 A.2d 1117, 1122 (D.C.1997) (quoting *Western Union Tele. Co. v. Massman Constr. Co.*, 402 A.2d 1275, 1277 (D.C. 1979)) (emphasis added); *accord District of Columbia v. Campbell*, 580 A.2d 1295, 1302 (D.C.1990); *Bay General Industries, Inc. v. Johnson*, 418 A.2d 1050, 1055 (D.C.1980). Whether the parties so intended in this case is a factual issue unresolved by the trial court.

■ However, although this court has not specifically addressed the legal issue, most jurisdictions adhere to the following corollary to third-party beneficiary rights:

[T]he parties to a contract entered into for the benefit of a third person may rescind, vary, or abrogate the contract as they see

---

and Crystal Tillerson, without recourse." The Fields took the position that Tillerson in fact simply paid off the note on behalf of the law firm, rather than acquiring the indebtedness in his personal capacity, and make other claims of invalidity. *See* Part III, *infra*.

3. The Tillersons also invoke the doctrines of accord and satisfaction, res judicata, single satis-

faction, and equitable conversion, but all are dependent upon the binding effect of the settlement agreement and therefore subject to the same weakness as the third-party beneficiary theory. We express no views as to the degree to which any actual payments on the Roxborough judgment or the clearance of title may affect the total amount due on the 1993 judgment.

fit, without the assent of the third person, at any time before the contract is accepted, adopted, or acted upon by him, and such rescission deprives the third person of any rights under or because of such contract. 17A AM. JUR. 2D *Contracts* § 461 (1991). *See also* RESTATEMENT (SECOND) CONTRACTS § 311(2) & (3) (1981) ("(2) . . . the promisor and promisee retain power to discharge or modify the duty by subsequent agreement. (3) Such a power terminates when the beneficiary, before he receives notification of the discharge or modification, materially changes his position in justifiable reliance on the promise or brings suit on it or manifests assent to it at the request of the promisor or promisee"). An early appellate case in the District of Columbia, *Merrick v. Giddings,* 1 Mackey 394 (D.C.1882), *aff'd Merrick's Ex'r v. Giddings,* 115 U.S. 300, 6 S.Ct. 65, 29 L.Ed. 403 (1885), is consistent with the modern majority rule. That case noted that had the original contract between the contracting parties contained a promise intended to benefit plaintiff third parties, the contracting parties "had a right to modify or rescind it at any time before the [third parties] made themselves privies by accepting and acting upon it." *Merrick v. Giddings, supra,* 1 Mackey at 416 (citations omitted). Thus, under *Merrick* and the current majority rule as set forth in the RESTATEMENT, which we adopt,[4] even assuming that they had intended Tillerson to be a third-party beneficiary, the Fields and Roxborough had the power to modify or rescind the settlement up until the point that Tillerson by some action thereon terminated that power.

The Fields argue that "[t]here is simply nothing in the record to evince an acceptance, adoption, or any form of reliance upon the settlement agreement by Tillerson or the Firm prior to its rescission." They further argue that Tillerson was subject to the Fields' extensive post-judgment execution proceedings in 1995 and the first half of 1996

on the Tillerson judgment after the entry of the consent judgment, and that Tillerson never defended himself during these proceedings, including a 1995 motion for a bench warrant and arrest of Tillerson, on the ground that the settlement agreement was binding.[5] This indeed seems to be a strong indication that Tillerson never expected that he was a third-party beneficiary of the settlement agreement or had any ground to challenge its rescission by Roxborough and the Fields in entering the consent judgment. At oral argument Tillerson asserted that his reliance on the settlement is shown by the fact that the law firm brought an action in order to resolve title in the Fields' favor. This argument lacks any persuasive force because the cases regarding the title dispute over the Fields' property were filed long before the settlement praecipe and consent orders came into being.[6] So far as we can determine, the record is otherwise void of any reliance by Tillerson on the settlement praecipe prior to entry of the consent order.

In these circumstances, we conclude that the trial court's denial of the motion for declaratory relief must be affirmed.

### III.

We now turn to the direct appeal, in which the Fields challenge the trial court's grant of the motion to quash the attachments. The Fields present a range of arguments against this ruling: 1) the second deed of trust note was paid in full at the time of the first foreclosure; 2) the foreclosure transactions were fraudulent conveyances; 3) the May 15, 1996, foreclosure and the trustee's deed were void by reason of George Tillerson's self-dealing; 4) Crystal Tillerson and Claude Roxborough individually were indispensable parties and should have been joined in any such motion and ruling; 5) the Fields were denied reasonable discovery rights and a hearing prior to the ruling; and 6) the order

---

4. On other third party beneficiary issues, this court has followed the majority rule. *See Aetna Casualty & Surety Co. v. Kemp Smith Co.,* 208 A.2d 737, 738–39 (D.C.1965) (explicitly adopting the third party beneficiary rule followed by the majority of jurisdictions).

5. The first mention of the settlement agreement as a defense that we have found is in the May 17, 1996, motion to quash.

6. These cases were eventually settled by the law firm's title insurer, with the Fields receiving clear title by deed to their property.

contained no findings of fact or conclusions of law.

■ The trial court seems to have proceeded on the assumption that if record title was in the name of someone other than the judgment debtor or, as here, in a form of ownership immune from execution,[7] the motion to quash was properly granted as to transactions subsequent to the date of such recordation. This may be true so as to protect persons dealing with the record owner as such owner. *See* D.C.Code § 45–801 (1996). However, record ownership alone cannot be conclusive so as to shield the record owner and prevent a judgment creditor from demonstrating that, as between the judgment debtor and the record owner, true title is in fact in the judgment debtor and subject to execution.[8] *See Massey–Ferguson, Inc. v. Finocchiaro Equipment Co., Inc.,* 496 F.Supp. 655 (E.D.Pa.1980) (denying record owner's motion to quash writ of execution against real property where judgment debtor determined to be true owner on theory of fraudulent conveyance), *aff'd without opinion,* 649 F.2d 859 (3d Cir.1981); *cf. Roberts & Lloyd, Inc. v. Zyblut, supra* note 7, (judgment creditor challenge to tenancy by the entireties holding on theory of fraudulent conveyance); *Quander v. Dow,* 721 A.2d 977 (D.C.1998) (bank account in name of judgment debtor may be shown to be subject to oral trust). This is the situation at issue here.

■ The facts (including questions of intent) underlying the series of transactions in which the Tillersons were involved subsequent to the entry of the 1993 judgment are murky and sharply disputed.[9] Because no hearing was held and no findings of fact made, we are in no position to make any definitive determination on appeal as to the validity of the Fields' arguments. *See Haden v. Henderson,* 521 A.2d 666, 668 (D.C. 1987). Accordingly, we are compelled to vacate the order quashing the writs of attach-

7. Property held by tenancy by the entireties is subject to execution only for joint debts of husband and wife. *See Finley v. Thomas,* 691 A.2d 1163, 1164 (D.C.1997); *Roberts & Lloyd, Inc. v. Zyblut,* 691 A.2d 635, 638 (D.C.1997).

8. Among other things, to quash a writ of attachment or execution on the basis of record title alone would seriously affect the priority of the attaching judgment creditor, both in terms of time and of subsequent notice. *Cf. Goldsmith v. William S. Bergman Assoc., Inc.,* 708 A.2d 640 (D.C.1998) (vacating order quashing writ of garnishment where rights of competing interests unclear). Of course, the record owner is not precluded from invoking the recording statute against the judgment creditor insofar as it may protect the record owner in having relied on record title in any dealings in which he fell within the protected class of "creditors and subsequent bona fide purchasers and mortgagees without notice." D.C.Code § 45–801, *supra; see, e.g., Clay Properties, Inc. v. Washington Post Co.,* 604 A.2d 890 (D.C.1992) (en banc).

9. Appellant identifies the following as a "sampling" of the findings that are required for a resolution of the dispute:

1. The findings required by [Super. Ct. Civ. R.] 19 as to whether Crystal Tillerson and Claude Roxborough were persons needed for just adjudication, whether their joinder as parties was feasible, whether they were indispensable and whether the motion to amend should be dismissed.

2. Whether the additional time that the Fields sought to pursue discovery before the court ruled on the emergency motion to amend was reasonable and whether they were entitled to a hearing.

3. Whether, under the Uniform Fraudulent Conveyances Act the Fields were "creditors," George Tillerson and Roxborough & Tillerson were "debtors," the Fields had a "claim," George Tillerson was an "insider," Crystal Tillerson was a "relative," Roxborough & Tillerson was a "corporation," the Tillersons' foreclosure related transactions were "transfers" and the Tillersons "intended to hinder, delay" the Fields' execution remedies and judgment lien upon the Georgia Avenue property and "defraud" the Fields.

4. Whether Rufus Stancil's second trust note was paid in full by George Tillerson on December 15, 1995.

5. Whether George Tillerson owed fiduciary duties to Roxborough & Tillerson and Claude Roxborough and whether he breached those duties.

6. Whether George Tillerson's emergency motion was an equity remedy and whether George Tillerson's conduct amounted to "unclean hands" which precluded equitable relief.

7. Whether the May 15, 1996 foreclosure was valid.

8. Who held equitable title to the Georgia Avenue property on May 15, 1996 (after the second purported foreclosure) and on July 11, 1996 (when the Tillersons' trustee's deed in foreclosure was filed).

ment and to remand the case for a hearing[10] and an order accompanied by any necessary findings of fact and conclusions of law.

*So ordered.*

---

**10.** The Fields argue that D.C.Code § 16–554 (1997) entitles them to a hearing as of right. That section provides that where a party files a claim to attached property, the trial court "shall try the issues raised by the claim, with a jury if either side so requests." The provision does not squarely fit the instant case and contains a puzzling exception for real property, but we assume that the trial court on remand will conclude that a hearing is appropriate.