Mark MENNA, Appellant,

v.

**PLYMOUTH ROCK ASSURANCE CORPORATION, Appellee.**

No. 07–CV–1308.

District of Columbia Court of Appeals.

Argued March 10, 2009.

Decided Jan. 21, 2010.

son to believe that his presence will provoke trouble cannot claim self-defense."

Mark Menna, pro se.

Walter E. Gillchrist, Jr., with whom Anne K. Howard and Andrew T. Rezendes were on the brief, for appellee.

Before GLICKMAN, KRAMER, and THOMPSON, Associate Judges.

GLICKMAN, Associate Judge:

Mark Menna appeals the trial court's denial of his motion to compel Plymouth Rock Assurance Corporation ("Plymouth Rock") to participate in arbitration. Although Menna and Plymouth Rock were signatories to an arbitration agreement, the court was persuaded by Plymouth Rock's claims that it had withdrawn from the agreement, and that Menna was barred by the statute of limitations, laches, and his own waiver from enforcing his

contractual rights. Plymouth Rock's purported withdrawal did not render its arbitration agreement with Menna a nullity, however. There is no doubt that the agreement was a valid contract. We conclude that the trial court therefore should have enforced it, leaving Plymouth Rock's procedural objections to be determined in the arbitration.

## I. Background

The dispute at the heart of this appeal is almost two decades old. In 1992, Mark Menna was injured when the taxi cab in which he was riding as a passenger was struck by another vehicle. The driver of that vehicle, Sarah Callahan, was insured by Plymouth Rock. On June 30, 1995, Plymouth Rock (as Callahan's agent) and Menna entered into a contract to arbitrate his claim under the auspices of United States Arbitration and Mediation of the Northeast, Inc. ("USA & M").

The contracting parties stipulated to liability; the only matters in dispute were the nature and extent of Menna's injuries and the amount of his damages.[1] The parties agreed that the arbitrator would be invested with "the authority to settle all points and controversies" in their dispute and would conduct the arbitration in accordance with District of Columbia law and the Rules of USA & M. By their terms, those Rules were deemed to be incorporated in the arbitration contract and Plymouth Rock and Menna were "legally bound to comply with" them. The Rules commit certain procedural matters to the "sole discretion" of the Arbitration Coordinator, including the determination of whether a party has "failed to proceed" with arbitration as contractually required,[2] the resolution of "procedural disputes," the imposition of "time limits on parties," and the decision of whether to "require a party to take action or refrain from taking action" in connection with the arbitration.[3]

Following the selection of an arbitrator, a hearing originally was scheduled to be held in the fall of 1997. The hearing was postponed, however, allegedly because Plymouth Rock retained new counsel who requested additional time to prepare. Due to a conflict, a new arbitrator was selected in the summer of 1998, but a new hearing date was not set. Menna alleges that he

---

1. The parties agreed that the arbitrator's award would be no less than $15,000 and no more than $250,000.

2. Rule 9, "Failure to Proceed," provides as follows:

Whenever an arbitration clause, contract or agreement or these rules call for a party to proceed with arbitration, a party shall be deemed to have failed to proceed with arbitration when: 1) the party repeatedly fails to respond to communications from U.S.A. & M. of the N.E.; 2) fails to proceed to the next step of arbitration after being properly informed to so proceed; 3) fails to comply with an Arbitrator's order; or 4) otherwise indicates an intent not to proceed. The Arbitration Coordinator, in his or her sole discretion, will determine when a party has "failed to proceed."

An arbitration award shall not be made solely on the default of a party but such an award may be made in the absence of a party upon a proper showing by the other party(s).

3. Rule 13, "Matters Not Addressed and Authority of the Arbitration Coordinator," provides as follows:

Any of the above procedures [set forth in the Rules] may be altered by the Arbitration Coordinator, in his or her sole discretion, to fit the circumstances of a particular case. Any matter not specifically addressed by these rules, or any conflict or ambiguity in these rules, will be decided by the Arbitration Coordinator, in his or her sole discretion, in a manner designed to result in a full, fair and impartial arbitration. The Arbitration Coordinator, in his or her sole discretion, has authority to prepare forms, resolve procedural disputes, impose time limits on parties, and otherwise require a party to take action or refrain from taking action.

periodically inquired and was told that USA & M would notify him when the arbitration hearing was scheduled. So far as it appears, this notification never came.

Instead, in September 1999, USA & M sent Menna a letter it had received from Robin Sacco, a Plymouth Rock claims representative. That letter, dated September 16, 1999, announced Plymouth Rock's decision to "withdraw" its agreement to arbitrate because of what it claimed was Menna's failure to proceed.[4] In light of that announcement, USA & M informed Menna that it had closed its file.

Upon receiving this news, Menna immediately contacted USA & M, which reinstated the arbitration on its docket. Menna also called Ms. Sacco, who allegedly promised to "let [him] know if they [Plymouth Rock] were going to go forward or not." Thus, Menna claims, he understood that Plymouth Rock had not yet made a final determination whether to withdraw from its agreement to arbitrate. Over the next few years, however, Menna heard nothing further from Plymouth Rock. He allegedly called USA & M every few months and was told that Plymouth Rock was still considering whether it would proceed with the arbitration. (The contract did not specify a time for performance.) Finally, according to Menna, on Septem-

ber 29, 2003, USA & M informed him that Plymouth Rock had made its decision. The company had decided it would not arbitrate.

Almost three years later, on September 26, 2006, Menna sued Plymouth Rock and Callahan in Superior Court. Menna alleged that Callahan was negligent in causing the automobile accident in 1992, and that the defendants breached the arbitration contract when Plymouth Rock finally refused to proceed with the arbitration in September 2003. The complaint sought monetary damages or, in the alternative, an order requiring the defendants to arbitrate. Plymouth Rock filed an answer denying Menna's claims.

Several months later, in mid–2007, Menna moved the court pursuant to the District of Columbia Uniform Arbitration Act[5] to order the parties to proceed with arbitration in accordance with their contract. Opposing that motion, Plymouth Rock argued that there was no contract for the court to enforce because the company withdrew from its agreement to arbitrate in September 1999. Because Menna waited more than three years after its withdrawal to file his lawsuit, Plymouth Rock contended, he was barred by the statute of limitations and by laches from asserting any rights under the contract.

---

4.  Ms. Sacco's letter to USA & M stated,

    As you know, your office, my office, and our counsel … made innumerable attempts to get some form of response from Mr. Menna regarding this case since our initial agreement to arbitrate on June 30, 1995. It has now been over four years since that agreement was made and to my knowledge, Mr. Menna has failed to make any attempt whatever to proceed with this hearing. At this point, I believe the rights of Plymouth Rock, as well as the rights of Ms. Callahan [the insured], may have been prejudiced by this failure and at this time Plymouth Rock is no longer interested in arbitrating this case.

    Please let this letter serve to withdraw our agreement to arbitrate.

    Contrary to the assertions in this letter, Menna claims that he had not received any communications from Plymouth Rock, its attorney, USA & M, or the arbitrator. According to Menna, USA & M has confirmed that it had no record of any unsuccessful attempts to communicate with him. There is no evidence in the record to support Robin Sacco's charge that Menna was unresponsive or otherwise at fault.

5.  D.C.Code §§ 16–4301 to 16–4319 (2001). As discussed below, these provisions have since been repealed.

Moreover, the company asserted, Menna waived his contractual rights by failing to proceed with the arbitration prior to September 1999, when he had the opportunity to do so.

In reply, Menna argued that Plymouth Rock's claims raised factual disputes regarding the existence of a valid arbitration agreement that would have to be resolved by the court in a summary evidentiary proceeding, as contemplated by the Uniform Arbitration Act, after the parties completed appropriate discovery.[6] Relying on his own deposition (which Plymouth Rock had taken), Menna proffered that he had not abandoned his pursuit of arbitration before USA & M and that Plymouth Rock had retracted its September 1999 withdrawal when it subsequently advised him and USA & M that it was still considering whether to go forward with the arbitration.

On October 26, 2007, the trial court denied Menna's motion to compel arbitration. It did so without first conducting the evidentiary proceeding that Menna had requested. The court's order states only that the motion was "denied for the reasons set [forth] in Defendant's Opposition[.]" Menna noted a timely appeal.[7]

## II. Analysis

■ Although the arbitration contract at issue in this case was made in 1995, we conclude that it is no longer governed by the provisions of the D.C. Uniform Arbitration Act relied upon in the trial court proceedings. That Act, set forth in Chapter 43 of Title 16 of the District of Columbia Code, was repealed effective July 1, 2009, by D.C. Law 17–111, the "Arbitration Amendment Act of 2007."[8] In place of Chapter 43, the Council adopted (with changes not material to the present case) the Revised Uniform Arbitration Act (RUAA) approved in 2000 by the National Conference of Commissioners on Uniform State Laws (NCCUSL).[9] The RUAA went into effect in the District of Columbia on February 27, 2008. It appears in Chapter 44 of D.C.Code Title 16.[10] To facilitate an orderly but complete transition, the Council delayed the full repeal of the predecessor Act, specifying that Chapter 43 of Title 16 would continue to govern arbitration agreements made prior to February 27, 2008, for a period of sixteen months,

---

6. *See* D.C.Code § 16–4302(a) ("On application of a party showing an agreement described in section 16–4301 [i.e., an agreement to arbitrate], and the opposing party's refusal to arbitrate, the Court shall order the parties to proceed with arbitration, but if opposing party denies the existence of the agreement to arbitrate the Court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied."); *Haynes v. Kuder,* 591 A.2d 1286, 1290 (D.C.1991) ("Proceeding 'summarily' means that the court initially determines whether material issues of fact are disputed and, if such factual disputes exist, then conducts an expedited evidentiary hearing to resolve the dispute." (Internal quotation marks omitted)).

7. The order was immediately appealable. *See* D.C.Code § 16–4317(a)(1) (2001); *Nat'l Trade Productions v. Information Development Corp.,* 728 A.2d 106, 109 (D.C.1999) ("The denial of a motion to compel arbitration is deemed to be a final order for purposes of appeal."); *Hercules & Co., Ltd. v. Beltway Carpet Serv., Inc.,* 592 A.2d 1069, 1071 (D.C.1991).

8. 55 D.C.Reg. 1847, 1863 (Feb. 27, 2008).

9. *See* Unif. Arbitration Act (2000), 7 U.L.A. (Part IA) (2009). The RUAA was a successor to the 1956 Uniform Arbitration Act, on which Chapter 43 of D.C.Code Title 16 was based.

10. D.C.Code §§ 16–4401 to 16–4432 (Supp. 2009).

i.e., until July 1, 2009.[11] The Council further provided, however, that as of July 1, 2009, Chapter 44—the RUAA—would "govern[ ] an agreement to arbitrate whenever made." [12]

▉ The RUAA contains a savings clause. As incorporated in Chapter 44, that clause reads as follows:

> This chapter does not affect an action or proceeding commenced or right accrued before the effective date of this chapter [i.e., February 27, 2008]. Subject to § 16–4403, an arbitration agreement made before the effective date of this chapter is governed by §§ 16–4301 to 16–4319.[13]

The first sentence of the savings clause, read alone, purports to render the RUAA inapplicable to any proceedings begun before its enactment. It appears, however, that the RUAA's drafters added the second sentence as an important limitation. As the commentary to the RUAA's savings clause explains, the section "continues the prior law ... with respect to a pending action or proceeding or right accrued *until* the [prior uniform act] is repealed" [14]—i.e., in the District of Columbia, only until July 1, 2009. In other words, according to the drafters, the savings clause does not apply after that date. Given that the Council adopted the clause verbatim without disagreeing with the drafters' explanation, we think it appropriate to defer to their interpretation of their handiwork. Thus, we construe the RUAA as applying to this appeal.[15]

▉ "Because arbitration becomes mandatory only by mutual consent of the parties, there must be an agreement between them—interpreted and governed by normal principles of contract law—which provides for arbitration." [16] Such an agreement "is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." [17] Thus, on a motion to compel arbitration, the threshold question for the court (under both the RUAA and its predecessor) is "whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." [18]

▉ Ordinarily, this threshold question is also the end of the court's inquiry. The RUAA expressly states that "[a]n arbitra-

---

11. *See id.* § 16–4403(a), (b).

12. *Id.* § 16–4403(e).

13. *Id.* § 16–4432.

14. Unif. Arbitration Act (2000) § 33, cmt. 1, 7 U.L.A. (Part 1A) 98 (2009) (emphasis added). *See also id.* § 3, cmt. 4 (providing an "illustration" of how the savings clause and other sections of the revised Act operate); Timothy J. Heinsz, *The Revised Uniform Arbitration Act: Modernizing, Revising, and Clarifying Arbitration Law*, 2001 J. Disp. Resol. 1, 38 (2001) (explaining that the savings clause is "subject to" the provision that, after the date on which the old Act is repealed, the revised Act governs all arbitration agreements whenever made). (Heinsz was the Reporter to the Drafting Committee to Revise the Uniform Arbitration Act and a Commissioner of the NCCUSL.)

15. When the legislature makes clear that a new law is retroactive (i.e., applies to pending cases), an appellate court must apply that law on appeal, *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 176 (D.C.2008), unless to do so would result in manifest injustice or engender substantial due process concerns. *Holzsager v. District of Columbia Alcoholic Bev. Control Bd.*, 979 A.2d 52, 57 (D.C. 2009). We have no such concerns about applying the RUAA in the present case.

16. *2200 M Street LLC v. Mackell*, 940 A.2d 143, 150 (D.C.2007).

17. D.C.Code § 16–4406(a); *see also id.* § 16–4301 (repealed).

18. *Id.* § 16–4406(b); *see also id.* § 16–4302(a) (repealed).

tor shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable." [19] The drafters' comment to this provision elaborates that

> in the absence of an agreement to the contrary, issues of substantive arbitrability, *i.e.*, whether a dispute is encompassed by an agreement to arbitrate, are for a court to decide and issues of procedural arbitrability, *i.e.*, whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.[20]

Similarly, construing the former Act in *Woodland Limited Partnership v. Wulff,*[21] we explained that once the "basic question" of the existence of an agreement to arbitrate "has been resolved in favor of arbitration,"

> the strong policy embraced in the [Uniform Arbitration Act] in favor of enforcement of arbitration agreements, *see* D.C.Code § 16–4301, reverses the presumption so that it is for the arbitrator to resolve other "gateway" matters that the parties "would likely expect" that the arbitrator would decide. This includes "procedural questions which grow out of the dispute and bear on its final disposition," and "allegations of waiver,

delay, or a like defense to arbitrability."[22]

■■■ In support of the trial court's decision to deny the motion to compel arbitration in this case, Plymouth Rock argues that its arbitration agreement with Menna "ceased to exist[ ]"[23] when it notified USA & M in September 1999 of its withdrawal from that agreement. We find this argument legally incorrect. A party's repudiation (or breach) of a contract does not negate the existence or the validity of the contract. On the contrary, it gives the aggrieved party the option of suing to enforce the contract.[24]

■■ Plymouth Rock also argues that Menna's suit to enforce the arbitration contract—i.e., to compel arbitration (or obtain damages)—is barred by Menna's waiver of his right to arbitrate, by the three-year statute of limitations for breach of contract claims, or by laches. These procedural defenses are predicated on Menna's alleged failure to proceed with arbitration when he had the chance and his subsequent tardiness in asserting his rights after Plymouth Rock refused to arbitrate.[25] Some courts have held that challenges to the enforceability of an arbitration agreement on such grounds are for the court to determine (unlike comparable timeliness and waiver challenges to the viability of the underlying claim, which are

---

**19.** *Id.* § 16–4406(c); *see also id.* § 16–4407(a), (c).

**20.** Unif. Arbitration Act (2000) § 6, cmt. 2, 7 U.L.A. (Part 1A) 26 (2009).

**21.** 868 A.2d 860 (D.C.2005).

**22.** *Id.* at 864–65 (internal citations omitted). *See generally Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (explaining the different role of the court and the arbitrator under the comparable provisions of the Federal Arbitration Act).

**23.** Brief of Appellee at 9.

**24.** *See EastBanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1004 (D.C.2008); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 253 (1981).

**25.** Plymouth Rock also has argued, for the first time on appeal, that Menna waived his right to arbitration by actively pursuing his present lawsuit in court. At oral argument, however, Plymouth Rock withdrew this claim.

more clearly for the arbitrator to determine).[26] However, we took a different view of the matter in *Woodland Limited Partnership*, holding that whether a party to an arbitration agreement had waived its right to compel arbitration (in that case, by litigating the dispute in court) was presumptively a question to be decided by the arbitrator, not the court.[27] While our opinion did not address whether a statute of limitations or laches defense to enforcement of an arbitration agreement is also for the arbitrator to consider, we see no reason to treat those defenses differently from waiver. The RUAA reinforces that conclusion. As noted above, it provides that "[t]he court shall decide whether an agreement to arbitrate exists," but an arbitrator "shall decide ... whether a contract containing a valid agreement to arbitrate is enforceable."[28] We construe this to mean that, while the court must decide challenges to the validity of an agreement to arbitrate, e.g., challenges on such grounds as fraud in the inducement, illegality, duress, unconscionability, mutual mistake and the like,[29] procedural defenses to enforcement that do not go to the validity of the agreement (including waiver, the statute of limitations and laches) are for the arbitrator to decide unless the parties have agreed otherwise.[30]

Nothing in the contract executed by Plymouth Rock and Menna suggests that they contemplated any other allocation of authority. Rather, as noted above, the contract invests the arbitrator with "the authority to settle all points and controversies" in their dispute. It further provides for the arbitration to be conducted under

26. *See, e.g., Cox v. Ocean View Hotel Corp.,* 533 F.3d 1114, 1120 (9th Cir.2008) (holding that waiver of the contractual right to arbitrate is for the court to decide); *Nat'l Iranian Oil Co. v. Mapco Int'l, Inc.,* 983 F.2d 485, 491 (3d Cir.1992) (holding that "the district court determines the timeliness of the petition to compel arbitration, while the arbitrator determines the timeliness of the demand for arbitration and of the underlying claims"). *But see Cox,* 533 F.3d at 1126 (O'Scannlain, J., dissenting) ("In my view, arbitrability is a matter for the court; whether or not the agreement to arbitrate was properly invoked, by either side, at any time, is a matter for the arbitrator to decide."); *Glass v. Kidder Peabody & Co., Inc.,* 114 F.3d 446, 455–58 (4th Cir.1997) (reversing district court and holding that it was for arbitrator to consider defense of laches predicated on party's delay in proceeding with court-ordered arbitration).

27. *Woodland Ltd. P'ship v. Wulff,* 868 A.2d 860, 865 (D.C.2005). Our decision in *Woodland Limited Partnership* appears to be in tension with two earlier decisions of this court holding that "whether the statute of limitations [applicable to the claim to be arbitrated] has run is for the court to decide in the absence of an unambiguous contractual provision to the contrary." *Capitol Place I Associates L.P. v. George Hyman Construction Co.,*

673 A.2d 194, 198 (D.C.1996); *accord Jacobsen v. Block,* 744 A.2d 1028, 1031 (D.C.2000). That holding was undermined, however, by the Supreme Court's intervening decision in *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). Under the current statute, D.C.Code Section 16-4406(c), it is for the arbitrator to decide whether an arbitrable claim is time-barred, at least unless the parties have agreed otherwise.

28. D.C.Code § 16-4406(b), (c).

29. *See, e.g., Haynes v. Kuder* 591 A.2d 1286, 1290 (D.C.1991) (distinguishing between a claim of fraud in the inducement, which is for the court to decide, and an attack based on a fraudulent contract itself, which is for the arbitrator to resolve).

30. In addition, it should be noted that the RUAA preserves the so-called "severability" doctrine. Under that doctrine, even the validity of a contract containing an arbitration clause is for the arbitrator to decide unless the challenge is directed specifically at the validity of the arbitration clause itself. *See* Unif. Arbitration Act (2000) § 6, cmt. 4, 7 U.L.A. (Part 1A) 27 (2009); *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 444–46, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006).

Rules that commit the resolution of procedural disputes—specifically including disputes over whether a party has "failed to proceed" with the arbitration and the imposition of time limits—to the "sole discretion" of the Arbitration Coordinator (an official of the arbitration service).[31] Given this language, "it is reasonable to infer that the parties intended" issues of timeliness and waiver to be within the arbitrator's authority to determine.[32]

For the foregoing reasons, we see no need for the trial court to conduct an evidentiary hearing on disputed issues of fact pertaining to Menna's motion to compel Plymouth Rock to arbitrate. Plymouth Rock's alleged repudiation or breach did not negate the existence of the contract to arbitrate and all remaining factual disputes pertain to issues reserved for decision in the arbitration process. We reverse and remand for entry of an order directing the parties to proceed with arbitration in accordance with their agreement.[33]

---

**31.** In effect, the Arbitration Coordinator is vested with arbitral powers with respect to certain aspects of the parties' dispute.

**32.** *Howsam,* 537 U.S. at 85, 123 S.Ct. 588.

**33.** Pending the outcome of the arbitration, the case in Superior Court should be stayed. *See* D.C.Code § 16–4407(f).