# District of Columbia
# Court of Appeals

**No. 15-CV-145**

ABU NASER HOSSAIN, *et al.*,

Appellants,



FILED

OCT 20 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

v.

CAB-8692-12

JMU PROPERTIES, LLC, *et al.*,

Appellees.

On Appeal from the Superior Court of the District of Columbia
Civil Division

BEFORE: FISHER and BLACKBURNE-RIGSBY, *Associate Judges*; and KING, *Senior Judge.*

## J U D G M E N T

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the judgment is vacated and the case is remanded for further proceedings consistent with this opinion.

For the Court:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court

Dated: October 20, 2016.

Opinion by Senior Judge Warren R. King.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CV-145

FILED 10/20/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

ABU NASER HOSSAIN, *et al*., APPELLANTS,

v.

JMU PROPERTIES, LLC., *et al*., APPELLEES.

Appeal from the Superior Court of the
District of Columbia
(CAB-8692-12)

(Hon. Maurice A. Ross, Trial Judge)

(Argued March 24, 2016                    Decided October 20, 2016)

*Brian P. Murphy* for appellants.

*Alex Chanthunya* for appellees.

Before FISHER and BLACKBURNE-RIGSBY, *Associate Judges*, and KING, *Senior Judge*.

KING, *Senior Judge*: Following a bench trial, appellants Profound Radiance, Inc. ("PRI") and Abu Naser Hossain were found liable on a counter-claim and 3rd-party complaint for breaching a commercial lease, breaching a franchise agreement, and fraud, for which the trial court entered a $391,640.82 judgment in appellees' favor. They now claim the trial court erred by denying their motion to

enforce an arbitration clause in a franchise agreement between the parties, erroneously entering judgment on behalf of Mickey Sood ("Sood") and on behalf of a 3rd-party ("JMU Tax") not named in the original complaint, and entering judgment on behalf of a party ("JMU Properties") for damages under a franchise agreement to which it was not a party.

We conclude that the trial court did not err in entering a judgment in appellee Mickey Sood's name because the circumstances surrounding both the lease and franchise agreement clearly show he was an intended 3rd-party beneficiary of both agreements. However, we also conclude that the judgment should be reformed consistent with the instructions set forth *infra*. We are also satisfied that the trial court did not err in issuing an order, based on waiver, denying appellants' motion to stay the proceedings and compel arbitration, which was entered after the evidentiary phase of the trial was completed and several months before the entry of judgment.[1]

---

[1] Appellants raise no additional challenges to the judgment in appellees' favor other than those discussed, *infra*.

**I.**

Mickey Sood is the president and managing member of the company known as JMU Properties, LLC ("JMU Properties") and the vice president and owner of a company known as JMU Tax & Preparation Services ("JMU Tax"). Abu Naser Hossain ("Hossain") is the President and owner of Profound Radiance, Inc. ("PRI"), a company that performs tax preparation services. On January 1, 2008, Hossain, in his capacity as owner of PRI, executed a five-year lease for the office space located at 1933 18th Street, N.W. ("18th Street office") with Sood, who signed as President of JMU Properties. On January 28, 2008, now acting as Vice President and owner of JMU Tax, Sood executed a franchise agreement with Hossain, who was again acting on behalf of PRI.

PRI fell behind in its rent obligations under the lease, and stopped making payments in November 2011. By November 2012, PRI had failed to pay rent for twelve months. Acting on behalf of JMU Properties, Sood changed the locks at the 18th Street office. On November 14, 2012, PRI filed a wrongful eviction action against JMU Properties and Sood. In March 2013, JMU Properties and Sood filed

a counter-claim against PRI and a 3rd-party complaint against Hossain[2] for, among other claims, breach of both the lease and the franchise agreement.

On March 22, 2013, nearly a year before the trial began, PRI moved[3] for dismissal, or alternatively for summary judgment, arguing that the real party in interest for claims arising under the franchise agreement—JMU Tax—was not named as a party in the counter-claim and 3rd-party claim. The trial court denied that motion on April 26, 2013. On April 17, 2013, while PRI's motion for

---

[2] In their brief, appellants PRI and Hossain incorrectly argue that "a third-party complaint can only be filed by [*sic*] a party that was not an original parties [*sic*] to the case." The applicable rule provides, however, that "a defending party [here, Sood and JMU Properties], as a 3rd-party plaintiff, may cause a summons and complaint to be served . . . upon a person [here, Hossain] not a party to the action who is or may be liable to the 3rd-party plaintiff for all or part of the plaintiff's claim against the 3rd-party plaintiff." Sup. Ct. Civ. R. 14 (a). *See also* R. 7 (a).

The wrongful eviction complaint was brought by PRI (not Hossain) against Sood and JMU Properties. Because Hossain was not a party to the original action, he was not subject to a counter-claim. However, he could be brought before the court by the filing of a 3rd-party complaint, as was done here.

[3] The motion is captioned Profound Radiance, Inc. (PRI) v. JMU Properties; however, the first line of the motion inaccurately states: "COMES NOW, the counterclaim Defendant Abu Naser Hossain . . . and move the court to dismiss the counterclaim . . . or, in the alternative, for summary judgment." We note that PRI was the sole plaintiff in the original action filed claiming wrongful eviction, but was not named as a party in the body of this motion as such. Further, Hossain was not the counter-claim defendant (PRI was the counter-claim defendant). Hossain, however, was named as the 3rd-party complaint defendant.

dismissal/summary judgment was pending, JMU Properties and Sood filed a motion to stay the proceedings and compel arbitration. PRI opposed that motion on May 20, 2013, arguing that its suit only implicated the lease agreement, which had no arbitration clause.[4] On June 3, 2013, the trial court denied JMU Properties and Sood's motion to stay and compel arbitration because it found that there was no enforceable arbitration provision.

On February 25, 2014, the parties proceeded to a bench trial. On March 7, 2014, PRI moved to stay the proceedings and compel arbitration. On March 9, 2014, PRI and Hossain moved to file an answer to the 3rd-party complaint, which had been filed nearly a year earlier. The court did not decide either motion while it allowed the trial to resume.

The evidence phase of the trial concluded on March 13, 2014, and the trial court took the matter under advisement to allow for submission of proposed findings of fact and conclusions of law. On April 15, 2014, the trial court denied PRI's motion to compel, holding that PRI "repeatedly waived his right to

---

[4] We note, however, that the counter-claim and 3rd-party claim, which were filed before the motion to compel arbitration, sought damages under the franchise agreement, which indisputably includes an arbitration provision. In its motion to compel arbitration, JMU Properties/Sood argued that "the franchise agreement and lease agreement are inextricably related."

arbitration. . . ." The trial court did, however, grant PRI's and Hossain's motion for leave to file an answer to the 3rd-party complaint.

On September 17, 2014, the trial court entered a $391,640.82 judgment[5] in favor of JMU Properties and Sood on their counter-claim and 3rd-party complaint.[6] Before us, neither PRI/Hossain nor JMU Properties/Sood challenges the amounts awarded. On October 1, 2014, PRI and Hossain moved the trial court to amend or alter that judgment arguing that it opposed the earlier attempt by JMU Properties/Sood to compel arbitration because there was no arbitration clause in the commercial lease agreement and no relationship between the named parties to the suit—JMU Properties and Sood—and JMU Tax. They further argued that Sood was not an intended beneficiary of the franchise agreement. On January 7, 2015, the trial court denied PRI's and Hossain's motion to alter judgment. It reiterated

---

[5] Based on the lease and the franchise agreement, the trial court found PRI/Hossain liable on a number of grounds, including unpaid rent plus interest, fraud, attorneys' fees, franchise fee costs, and commissions. The exact amounts for each are set forth in the trial court's order, totaling $391,640.82.

[6] The trial court also entered a $100.00 judgment on behalf of PRI and Hossain on the original claim for wrongful eviction. None of the parties challenge this award.

its original finding[7] that Sood was the intended beneficiary of both the lease and the franchise agreement and that the two documents were intended to function together. It also found that under the totality of the circumstances, PRI's and Hossain's behavior was inconsistent with a right to arbitrate, resulting in waiver.

This appeal follows.

## II.

We first address the relationship between Sood, JMU Properties and JMU Tax. Interpretation of a contract is a legal question this court reviews *de novo*. *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1063 (D.C. 2008) (quoting *Unfoldment, Inc. v. District of Columbia Contract Appeals Bd.*, 909 A.2d 204, 209 (D.C. 2006)). In interpreting a contract, we must determine how a reasonable person in the position of parties would understand the disputed provision and honor their expressed intentions. *Id.* at 1064.

---

[7] That finding can be inferred from the trial court's April 26, 2013, order denying the motion to dismiss or for summary judgment under circumstances in which PRI/Hossain argued that Sood was not the real party in interest. The order does not elaborate the basis for the denial; however, it certainly can be read as rejecting the argument that Sood was not the real party in interest.

"A third party to a contract 'may sue to enforce its provisions if the contracting parties *intend* the third party to benefit directly thereunder.'" *Fields v. Tillerson*, 726 A.2d 670, 672 (D.C. 1999) (quoting *Johnson v. Atl. Masonry Co.*, 693 A.2d 1117, 1122 (D.C. 1997)). This intent can be shown expressly or by implication, *Fort Lincoln Civic Ass'n, Inc.*, *supra*, 944 A.2d at 1064, but only an intended beneficiary can sue to enforce a contract existing "between two others." *District of Columbia v. Campbell*, 580 A.2d 1295, 1302 (D.C. 1990); *see also Fort Lincoln Civic Ass'n*, 944 A.2d at 1064-65 (incidental beneficiaries not eligible to enforce contractual terms that might benefit them). "To be intended, a beneficiary need not be named in the contract, as long as he or she is ascertainable from the contract and the circumstances of the contract." *Kitty Hawk Aircargo, Inc. v. Arthur D. Little, Inc.*, 934 F. Supp. 16, 20 (D. Mass. 1996) (interpreting District of Columbia law) (citing *W. Union Tel. Co. v. Massman Constr. Co.*, 402 A.2d 1275, 1277 (D.C. 1979)); *see also Needham v. Hamilton*, 459 A.2d 1060, 1061-63 (D.C. 1983) (citations omitted) (discussing the need to limit liability of contracting parties to intended beneficiaries to limit those eligible to bring future causes of action). This Court will read the contract as a whole to determine whether "the third party's benefit . . . is intended or incidental." *W. Union Tel. Co., supra*, 402 A.2d at 1277 (cited with approval in *Jahanbein v. The Ndidi Condo. Unit Owners Ass'n, Inc.*, 85 A.3d 824, 831 (D.C. 2014)).

We agree with the trial judge's finding that Sood was an intended 3rd-party beneficiary of the franchise agreement with PRI and Hossain. It is beyond dispute that Sood was the sole owner of both JMU Properties and JMU Tax, and clearly stood to benefit from any commercial arrangements involving those entities. The record also shows that Sood negotiated and signed both the lease and franchise agreement in his capacity as the owner of the respective companies. We note, as did the trial court, that Sood signed the franchise agreement using the title "Vice President" of JMU Tax, making his involvement plainly ascertainable from the four corners of the contract. *W. Union Tel. Co.*, *supra*, 402 A.2d at 1277. Moreover, the trial court found that the franchise agreement referred back to the terms of the lease, a finding which appellants do not now challenge. This, along with Sood's testimony that he would not have leased the 18th Street office space to a non-JMU Tax franchisee, which the trial court credited, demonstrates that the parties intended the lease and franchise agreement to enable one another. And, since Sood is an ascertainable 3rd-party beneficiary of the franchise agreement, he was entitled to counter-claim and bring a 3rd-party suit in his own name to enforce its terms. *Fields*, *supra*, 726 A.2d at 672; *W. Union Tel. Co.*, *supra*, 402 A.2d at 1277.

**III.**

We next consider PRI and Hossain's contention that the trial court erred in denying PRI's motion to stay the proceedings and compel arbitration on the basis that PRI had "repeatedly waived [its] right to arbitration and, in fact, rigorously fought arbitration until the second day of trial." In *Woodland Ltd. P'ship v. Wulff*, this court relied on the Supreme Court's decision in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002), to clarify the "allocation of decision-making between court and arbitrator." 868 A.2d 860, 864 (D.C. 2005). Because "the arbitrator's authority derives from the consent of the parties," preliminary "gateway dispute[s] about whether the parties are bound by a given arbitration clause raise[] . . . question[s] of arbitrability for the court to decide." *Id*. (citing *Howsam*, *supra*, 537 U.S. at 84). Once the court has settled the basic contractual question, "it is for the arbitrator to resolve other 'gateway' matters that the parties would likely expect that the arbitrator would decide, including procedural questions which grow out of the dispute and bear on its final disposition . . . and allegations of waiver, delay, or a like defense to arbitrability." *Id*. at 865 (internal quotation marks and citations omitted). *See also Menna v. Plymouth Rock Assur. Corp.*, 987 A.2d 458, 465 (D.C. 2010); D.C. Code § 16-4406.

Neither *Howsam*, *Woodland* nor *Menna*, however, addresses the issue before us: who decides the question of "waiver by litigation conduct" in the circumstances presented here. *Cf. Howsam*, *supra*, 537 U.S. 79; *Menna*, *supra*, 987 A.2d 458; *Woodland*, *supra*, 868 A.2d 860. An increasing number of state supreme courts and federal circuit courts have interpreted *Howsam* in a way that holds that "waiver by litigation conduct" is of a different nature than other waiver inquiries exclusively allocated to the arbitrator's authority. *See, e.g.*, *Hong v. CJ CGV Am. Holdings, Inc.*, 166 Cal. Rptr. 3d 100, 113 (Cal. Ct. App. 2013) (citing federal circuit court and state supreme court cases that hold that waiver by litigation conduct should be decided by the court as opposed to an arbitrator). In particular, the First, Third, Sixth, and Eleventh Circuits have carved out an exception to *Howsam's* general presumption: that when the inquiry is waiver by litigation conduct, the court should decide. *Grigsby & Assocs. Inc. v. M Sec. Inv.*, 664 F.3d 1350 (11th Cir. 2011); *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388 (6th Cir. 2008); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207 (3d Cir. 2007); *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1 (1st Cir. 2005).

The Third Circuit points out that *Howsam* "upset" the traditional general presumption that courts—not arbitrators—decide issues of waiver. *Ehleiter*, *supra*, 482 F.2d at 217-18. In particular, the Third Circuit focuses a portion of its analysis

on the comment section of the Revised Uniform Arbitration Action (RUAA).[8] *Id.* (citing RUAA § 6(c) 7 U.L.A. (Supp. 2002) (Revised Uniform Arbitration Act)). In reaching its holding, *Howsam* cited RUAA Section 6 stating "[an] arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled," and "in the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, *i.e.,* whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitration have been met, are for the arbitrators to decide*." Id.* (citing *Howsam* at 85 (quoting RUAA § 6(c) cmt. 2 (Supp. 2002)). However, the comment to RUAA Section 6 also states that "waiver is one area where courts, rather than arbitrators, often make the decision as to enforceability of an arbitration clause." *Id.* (quoting RUAA § 6 cmt. 5 (Supp. 2004)).

The First Circuit puts forth other compelling arguments for this interpretation, such as the fact that waiver of the right to arbitrate "heavily implicates judicial procedures," *Marie*, *supra*, 402 F.3d 1 (internal quotation marks

---

[8] The District of Columbia adopted the RUAA in 2008. D.C. Code §§ 16-4401, -4432 (2008) (Revised Uniform Arbitration Act).

omitted), and "the trial judge, having been directly involved in the entire course of the legal proceedings is better positioned to determine [the waiver issue]." *Ehleiter*, *supra*, 482 F.3d at 218 (citing *Marie*, *supra*, 402 F.3d at 13) ("The court should remain free to 'control the course of proceedings before it and to correct abuses of those proceedings' rather than being required to defer to the findings [of] an arbitrator with no previous involvement in the case."). Additionally, the First Circuit stresses that it would be inefficient for a trial court to send a waiver determination to an arbitrator, who subsequently may have to return the case right back to the trial court if waiver were found. *Marie*, *supra*, 402 F.3d at 13.

We note, however, that the Eighth Circuit has held in the contrary with respect to waiver by litigation conduct. *See Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 328 F.3d 462, 466 (8th Cir. 2003). But, the underlying facts in that case involve waiver mostly from prior *arbitration* proceedings. Essentially, the facts of *Transamerica* are the inverse of the case before us: an arbitration panel already familiar with the parties' case was favored to decide the issue of waiver as opposed to a trial judge with no prior involvement in the case. *Id*. The Third Circuit persuasively distinguishes the Eighth Circuit's opinion by explaining "[to] the extent that *Transamerica* may be understood as a case involving waiver by prior arbitration conduct, rather than by prior litigation

conduct, the case is plainly distinguishable from ours on this basis." *Ehleiter*, *supra*, 482 F.3d at 220.

Obviously, the facts of each case will present different permutations of activities that may constitute "litigation conduct." Although the specific facts of our case are not mirrored in any of the circuit courts' opinions, PRI's original opposition to arbitration and its subsequent motion to compel arbitration fall under the general "litigation conduct" umbrella since these activities were conducted in court—*i.e.*, they were more in the nature of actions for a court to decide than an arbitrator. The Third Circuit sets forth a number of cases that have held that the "litigation conduct" that allows the trial judge to determine waiver can occur prior to trial. *Ehleiter*, *supra,* 482 F.3d at 223. However, we need not decide today whether an action invoked earlier than the beginning of trial can constitute "litigation conduct"[9] since trial had clearly commenced in this case before PRI filed its motion to compel arbitration. It is eminently clear that once trial has begun, significant "litigation conduct" has taken place.

---

[9] We note that in *Woodland*, *supra*, 868 A.2d at 864, we held that the arbitrator should decide the waiver issue where the defense had "filed an answer and counter-claim, participated in discovery, and filed various [unspecified] motions."

Thus, for the reasons stated, we are persuaded that the trial judge can properly decide whether there has been a "waiver by litigation conduct" in circumstances like those presented here.  In finding waiver, the trial judge properly relied on the standard that the District of Columbia Circuit has traditionally used: a "totality of the circumstances" test as to whether the party has acted "inconsistently" with arbitration.  *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons*, 261 U.S. App. D.C. 284, 286, 821 F.2d 772, 774 (1987).  The D.C. Circuit has "held that one example of conduct inconsistent with the right to arbitrate is active participation in a lawsuit."  *Id.* at 287 (citing *Cornell & Co. v. Barber & Ross Co.*, 123 U.S. App. D.C. 378, 379, 360 F.2d 512, 513 (1966)).  Although other Circuits rely on a prejudice-based test, *see, e.g.*, *Hoxworth v. Blinder, Robison & Co.*, 980 F.2d 912, 925 (3d Cir. 1992), the D.C. Circuit has never required a finding of prejudice, although it has stated that prejudice may be a relevant consideration. *Khan v. Parsons Global Servs., Ltd.*, 380 U.S. App. D.C. 320, 521 F.3d 421, 425 (2008); *Nat'l Found.*, *supra*, 821 F.2d at 777.  Here, the trial judge held that PRI/Hossain acted inconsistently with arbitration by "actively participating" in litigation by commencing *a trial.*  ("And what could be a more active participation in litigation than a trial itself?").  The trial judge was further persuaded by a showing of prejudice, which although not necessary, is a factor that can be taken into account.  We think that the judge's findings are well-supported

by the evidence and that the judge correctly ruled that PRI/Hossain waived arbitration by its litigation conduct. Accordingly, we affirm the trial judge's finding of waiver.

## IV.

Finally, we remand the case to the trial court and direct the court to enter a reformed judgment stating that, on the counter-claim of breach of lease, judgment is in favor of JMU Properties and Sood. On the counter-claim of breach of contract and fraud, the judgment is in favor of JMU Tax and Sood. The total award of $391,640.82 should accordingly be recalculated and allocated based on whether the damages arose out of appellants' breach of the lease, breach of contract, or fraud.

The trial court addressed JMU Tax's standing and amended the counter-claim *nunc pro tunc* in order to add JMU Tax as a party. Consistent with that ruling and the trial court's finding that Sood is the "sole owner of both JMU Tax Service *and* JMU Properties, LLC" and thus the "real party in interest," we include JMU Tax as a party here.

We agree with the trial court that appellants are not prejudiced by the addition of JMU Tax as a party as "there are no witnesses, documents, or other discoverable materials to which [appellants] could plausibly claim to have been denied access as a result of JMU Tax Services not being named on the initial pleading."

For the foregoing reasons, the judgment is vacated and the case[10] is remanded for further proceedings consistent with this opinion.

---

[10] *See Bell v. United States*, 676 A.2d 37, 40-41 (D.C. 1996) (explaining the difference between a "record" remand and a "case" remand).